STATE OF CONNECTICUT *v.* ANTONIO MILNER
(AC 31572)

Beach, Alvord and Schaller, Js.

Argued February 3—officially released July 5, 2011

*David J. Reich*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Chris Pelosi*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Antonio Milner, appeals from the judgment of the trial court finding him in violation of probation in violation of General Statutes § 53a-32. The defendant claims that (1) there was insufficient evidence for the court to find by a preponderance of the evidence that a probation violation had occurred, (2) the court discouraged him from exercising his right to allocution during the dispositional phase of the probation revocation hearing and (3) the court abused its discretion when, during the dispositional phase, it revoked his probation and sentenced him to forty-eight months imprisonment. We dismiss the appeal insofar

as it relates to whether the defendant violated the terms of his probation and otherwise affirm the judgment of the trial court.

The following facts and procedural history are relevant. In 1995, the defendant was convicted, following a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 and was sentenced to fifteen years imprisonment, execution suspended after ten years, followed by three years probation. On August 24, 2005, the defendant was released from prison and began serving his probationary term. Upon his release from prison, the defendant signed a form listing his conditions of probation, which included, inter alia, the general terms that he not violate any criminal laws and that he report as directed by his probation officer.

The defendant's sentence included a term of three years probation, which ran from August 24, 2005, to August 24, 2008. On January 28, 2008, the defendant was arrested and charged with unsafe backing of a motor vehicle in violation of General Statutes § 14-243, reckless driving in violation of General Statutes § 14-222, failure to obey an officer's signal in violation of General Statutes § 14-223 (b), operating a motor vehicle under a suspended license in violation of General Statutes § 14-215, larceny in the second degree in violation of General Statutes § 53a-123, interfering with a police officer in violation of General Statutes § 53a-167a (a), criminal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, carrying a pistol without a permit in violation of General Statutes § 29-35 and criminal possession of a pistol in violation of General Statutes § 53a-217c. Additionally, the defendant was charged with violating the terms of his probation.

At the hearing on the violation of probation charges, the court apparently credited the following testimony.

Anthony Niglio, the defendant's probation officer, testified that the defendant was scheduled to meet him at the office of adult probation on January 18, 2007. Prior to that date, however, Niglio took paternity leave. He testified that because he was not at work on January 18, 2007, he had no knowledge of whether the defendant reported on that date. Probation officer Tiana Armstrong testified that the defendant's case was assigned to her on January 31, 2007. She testified that there was no indication in the defendant's file that he reported on January 18, 2007. Armstrong testified that as a result, on February 22, 2007, she mailed a letter to the address that the defendant had provided, asking him to report to her on April 3, 2007. The defendant did not report on that date. On June 15, 2007, Armstrong attempted to contact the defendant by telephone using the number he had provided as his home telephone number. Armstrong received a recording indicating that the number was out of service. On September 18, 2007, Armstrong again placed a telephone call to the defendant's home number and again received a message that the number was out of service. She then telephoned the defendant's cell phone number and was directed to voice mail by a female voice. Armstrong left a detailed message stating that the defendant was in "violation status" because he had failed to report and asking the person who created the voice prompt to tell the defendant to contact her as soon as possible or to contact her if the person knew his whereabouts.

When Armstrong did not receive a response from the defendant, she tried to contact the defendant using both telephone numbers on October 16, 2007. The home telephone number registered as "out of service," and she did not leave an additional voice mail message on the defendant's cell phone because Armstrong was unsure of the identity of the woman who created the voice prompt.

On October 25, 2007, Armstrong mailed a certified letter to the defendant at his home address, directing the defendant to report in person to her on October 31, 2007. The letter was accepted at the defendant's home address. On January 16, 2008, Armstrong again telephoned the defendant's home number. The telephone rang and a male answered. He said that he was the defendant's brother. The person said that the defendant was not there and that he did not know where the defendant was. He agreed to give the defendant a message from Armstrong that the defendant was in violation of his probation for not reporting.

Sean Spell, a sergeant with the Hartford police department, testified that on January 18, 2008, he was alerted to an "active burglary" in the Frog Hollow section of Hartford. As Spell was traveling toward the scene, he received a radio message from a responding officer that two vehicles were chasing each other at a high rate of speed northbound toward Allen Place. Spell positioned his police cruiser on Allen Place and waited for the cars to arrive. Spell observed a Lexus with heavily tinted windows traveling at a high rate of speed on Allen Place, and he pursued the vehicle. At some point, the defendant, who was driving the Lexus, was confronted with heavy traffic. The defendant then drove the Lexus in reverse at a high rate of speed down Allen Place and toward Spell's cruiser. Spell activated the lights on his cruiser and drove into a driveway to avoid being hit. Another cruiser arrived, in which Officer Frank Verrengia and other officers were riding. Both cruisers pursued the Lexus. While the Lexus was still in reverse, the defendant crashed it into a tree. The defendant revved the engine, and the tires spun in an embankment of snow.

Spell blocked the Lexus with his cruiser. Spell and the other officers drew their guns and surrounded the Lexus, ordering the defendant to turn off the engine

and open the doors. The occupants of the Lexus ignored these orders. Spell observed "a lot of movement" in the Lexus. It looked as though someone was trying to conceal or to grab something, but he was unable to discern precisely what was happening because of the dark tint of the windows. Spell ordered the other officers to smash the windows. Verrengia shouted, "10-83," which was a code for the presence of a gun, and Spell noticed a gun in the center console. The officers physically had to remove the defendant and the other occupant from the Lexus. The officers later learned that the Lexus was reported to have been stolen. Verrengia testified similarly. He added that when he shouted, "10-83," it appeared as if the driver was reaching toward the weapon.

The defendant does not dispute that he was the driver of the Lexus. The defendant, however, provided the court with a different version of events, which the court did not credit. The court found that the defendant had violated the terms and conditions of his probation and that his probation should be revoked. The court imposed a total effective sentence of forty-eight months imprisonment. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the following standards. "[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked." (Internal quotation marks omitted.) *State* v. *Fowler*, 102 Conn. App. 154, 165, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007).

I

The defendant first claims that there was insufficient evidence for the court to find by a preponderance of the evidence that a probation violation occurred. Before we address the merits of the defendant's claim, we must resolve a preliminary issue raised by the state. The state argues that we should dismiss as moot the defendant's claims insofar as they challenge the court's finding of a violation of probation. We agree with the state.

"Mootness implicates a court's subject matter jurisdiction and, therefore, presents a question of law over which we exercise plenary review. . . . For a case to be justiciable, it is required, among other things, that there be an actual controversy between or among the parties to the dispute . . . . [T]he requirement of an actual controversy . . . is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . . Moreover, [a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) *State* v. *T.D.*, 286 Conn. 353, 361, 944 A.2d 288 (2008). "We have long held that because [a] determination regarding a . . . court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Alexander*, 269 Conn. 107, 112, 847 A.2d 970 (2004).

The state argues that the defendant's challenge to the finding of violation of probation is moot because

on March 24, 2010, the defendant pleaded guilty, pursuant to the *Alford* doctrine,[1] to one of the underlying criminal charges, namely, the offense of carrying a pistol without a permit, and has not filed a timely direct appeal. The time for filing an appeal has long expired. The defendant argues that his challenge to the court's findings during the adjudicatory phase is not moot because, during the pendency of this appeal, he filed a petition seeking habeas corpus relief from the underlying criminal conviction. The defendant contends that the habeas petition, which collaterally attacks the underlying criminal conviction, has revived the controversy as to the underlying conviction. We agree with the state.

Our jurisprudence holds quite clearly that where a defendant's probation has been found to have been violated on the ground that he had engaged in criminal activity during the period of his probation and, after the judgment of violation of probation, he pleads guilty to a crime arising from the same activity, there is no longer a live controversy as to whether he engaged in the criminal activity, and any appeal from the violation of probation judgment on that issue is mooted. See *State* v. *Singleton*, 274 Conn. 426, 439, 876 A.2d 1 (2005). An intervening conviction after trial of a crime arising from the same activity likewise moots the issue in an appeal from the judgment of violation of probation. *State* v. *T.D.*, supra, 286 Conn. 364. If the criminal conviction has been appealed, and the appeal is pending at the time of the appeal from the probation hearing, then a live controversy still exists and the issue on appeal in the probation context is not mooted. Id., 366–67. In *State* v. *T.D.*, supra, 366–67, our Supreme Court held: "If a defendant has been convicted of criminal conduct, following either a guilty plea, *Alford* plea or

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37–39, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

a jury trial, and the defendant does not challenge that conviction by timely appealing it, then the conviction conclusively establishes that the defendant engaged in that criminal conduct. An appeal challenging a finding of violation of probation based on that conduct is, therefore, moot. When, however, the defendant has pursued a timely appeal from a conviction for criminal conduct and that appeal remains unresolved, there exists a live controversy over whether the defendant engaged in the criminal conduct, and an appeal challenging a finding of violation of probation stemming from that conduct is not moot."

Our jurisprudence has not answered the question whether a collateral attack on the intervening criminal conviction has the same effect as a direct appeal.[2] Although cogent arguments exist on both sides of the question, we hold that a collateral attack on the intervening criminal conviction does not serve to revive the controversy such that mootness is averted. Several reasons support this conclusion. First, the unambiguous language of cases such as State v. T.D., supra, 286 Conn. 353, speaks only in terms of direct appeal: "If a defendant has been convicted of criminal conduct, following either a guilty plea, Alford plea or a jury trial, and the defendant does not challenge that conviction by timely appealing it, then the conviction conclusively establishes that the defendant engaged in that criminal conduct. An appeal challenging a finding of violation of probation based on that conduct is, therefore, moot." Id., 366. In the course of discussing precedents, the court in State v. T.D., supra, 353, stressed the importance of the appeal in assessing finality: "[In prior cases] the period in which to appeal from the judgment in the underlying criminal matter had long since expired, indicating that no appeal was forthcoming. Accordingly,

---

[2] An appeal maintains the controversy, while a habeas corpus action at most arguably revives the controversy.

each defendant's criminal conviction was *final and unchallenged*, thus making it clear that any controversy over whether he had engaged in the conduct underlying his probation violation unquestionably had concluded and that the conviction was so definite as to establish conclusively that a violation of probation had occurred." (Emphasis added.) Id., 365.

Second, policy reasons underlying the rule favor a bright line demarcation. Our Supreme Court has stated that the mootness consideration underlying the bar is not whether practical relief can be afforded, but, rather, whether a live controversy exists as to whether the defendant committed the criminal conduct. See *State* v. *Singleton*, supra, 274 Conn. 439. If no appeal is taken, or if a direct appeal is decided adversely to the defendant, the conviction is, for jurisprudential purposes, final. *State* v. *T.D.*, supra, 286 Conn. 365. There is no time limitation, other than considerations of custody and collateral consequences, on the filing of a petition seeking habeas corpus relief, and, additionally, several years can pass between the filing of a claim for habeas corpus relief and its disposition.

Finally, this court in *State* v. *Mapp*, 118 Conn. App. 470, 984 A.2d 108 (2009), cert. denied, 295 Conn. 903, 988 A.2d 879 (2010), was presented with a situation much like that in the present case. The defendant in *Mapp* had been found to have violated terms of his probation by committing a criminal act and subsequently pleaded guilty to a crime based on the same conduct as that underlying the violation of probation. While the appeal from the judgment of violation of probation was pending, the defendant apparently filed a habeas corpus petition attacking the guilty plea. This court, though not expressly addressing the issue, held that the issue as to whether there was sufficient evidence to support the finding of violation of probation was nonetheless moot. We stated that "[t]o the extent

that the defendant challenges the validity of his guilty plea, we decline to address his claim because the guilty plea cannot be challenged in this forum." Id., 477 n.4. The dissent in *Mapp* suggested that the court should have requested briefs from the parties to address the issue of whether the habeas action revived the controversy. Id., 479–80 (*Berdon, J.,* dissenting).

In essence, the *Singleton* doctrine is one of policy. Classical mootness does not apply: the reviewing court can afford practical relief, and the parties have an actual dispute as to whether sufficient evidence was provided at the violation of probation hearing. Our Supreme Court simply has decided that if one is convicted of a crime, he may not claim that in a prior violation of probation hearing regarding the same course of conduct, there was insufficient evidence to prove the violation. We reinforce that principle today.

## II

The defendant next claims that the court discouraged him from exercising his right to allocution during the dispositional phase of the probation revocation hearing. We conclude that the court did not abuse its discretion.

A defendant has the right under our rules to address the court at the time of sentencing in the dispositional phase of a probation revocation hearing. *State* v. *Strickland,* 243 Conn. 339, 703 A.2d 109 (1997). Practice Book § 43-10 (3) provides that before imposing a sentence in a criminal case after a finding of guilty "[t]he judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence."

Following the close of evidence and during final argument of defense counsel on the adjudicatory question

of whether the defendant violated the terms of probation, the following colloquy occurred:

"The Court: If we were talking about just somebody who lost touch at the end of probation because he didn't call in and people didn't give him messages, you know, after a period of good behavior or a short period of incarceration he'd be back on the street. So, we're talking about the gun in the car.

"[Defense Counsel]: Yeah, Your Honor, again, I think that it's a matter of credibility. I mean if—you know the environment in Hartford is such that it's a dangerous place, and I think that if [the defendant] believed that he was really being chased by somebody who meant to do him no good his reaction is understandable.

"The Court: Let me ask you this. I heard that the sergeant saw the car speeding down the road and as he observed it, it went down a road which was blocked and then he came back and that the second car, the one driven by the uniformed officer with the Crown Victoria, pulled in behind that car. So, what car was chasing [the defendant] when originally observed by the police? I can't reconcile the two stories.

"[Defense Counsel]: I don't know the answer, Your Honor, but, you know—

"The Court: See, that's . . . where his story falls apart.

"The Defendant: Not my story, their story. . . .

"[Defense Counsel]: It depends who you believe, I guess, Your Honor.

"The Defendant: Excuse me. Can I say something?

"The Court: No. You testified. That's it."

The court stated that it found the defendant in violation of probation. The court then turned to the dispositional phase and both counsel offered arguments. At no time did the defendant, either himself or by counsel, request the right to speak personally during the dispositional phase.

The defendant argues that the court's statement, "No. You testified. That's it," prevented him from exercising his right to allocution during the dispositional phase. He contends that although the court's statement occurred during the adjudicatory phase, it occurred immediately prior to the dispositional phase of the hearing. As such, the defendant argues, the clear implication of the court's response was that the defendant did not have any further right to speak during the remainder of the trial.

The defendant's claim is unpreserved.[3] The defendant seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[4] The defendant's claim fails under the second prong. Although the defendant characterizes the right of allocution as being of constitutional dimension, "[t]he right of allocution in Connecticut derives from a rule of practice. There is no Connecticut authority that has recognized a constitutional right of allocution. See *State* v. *Strickland*, [supra, 243 Conn. 340 n.1]." *State* v. *Hooks*, 80 Conn. App. 75,

---

[3] The defendant sought to speak during the adjudicatory phase but never sought to exercise his right to allocution during the dispositional phase. Under these circumstances, his claim is unpreserved.

[4] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

85 n.6, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). The right of allocution is not a right guaranteed by the federal constitution but rests instead on the traditions of the common law. *State* v. *Hedman*, 62 Conn. App. 403, 409, 772 A.2d 603 (2001), rev'd on other grounds, 261 Conn. 390, 802 A.2d 842 (2002).

The defendant also requests review under the plain error doctrine. See Practice Book § 60-5. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . [W]e recently clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Citation omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 204–205, 982 A.2d 620 (2009).

We conclude that the defendant cannot prevail under the plain error doctrine because the trial court did not commit error, much less plain error. It is clear from the context that the court was questioning how it could reconcile the different versions of events presented to it during the adjudicatory phase. The defendant wanted to expand on his testimony, despite the fact that his testimony had concluded and evidence was closed. The court did not permit the defendant to testify further. After finding that the defendant had violated probation, the court clearly indicated that it was moving on to the dispositional phase. The defendant did not request to exercise his right to allocution during this phase. There is nothing in the record to indicate that the court discouraged the defendant from exercising his right to allocution during the dispositional phase.

The defendant also requests that we exercise our supervisory powers over this claim. "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State v. Ouellette*, 271 Conn. 740, 762 n.28, 859 A.2d 907 (2004). This case does not present the type of extraordinary circumstances for which our supervisory powers are reserved. Accordingly, we decline to exercise our supervisory power to review this claim.

III

The defendant last claims that the court abused its discretion when, during the dispositional phase, it revoked his probation and sentenced him to forty-eight months imprisonment. We disagree.

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185–86, 842 A.2d 567 (2004). "On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Mapp*, supra, 118 Conn. App. 478.

During the dispositional phase, the court made the following findings: "In isolation, I could believe one of his contentions, but these are a series of hard to believe contentions by a man who's lived his whole life . . . not observing the rules. Like I said, he didn't know he was in violation of status, he never got a letter, never got a message, never saw the gun, didn't know the car was stolen, thought . . . he was being chased by somebody other than the police. All these things in isolation, if taken separately, are hard to believe. All together, I mean, it's . . . like a fairy tale. It's a fantasy. The claims of the state are consistent with the way he's lived his

whole life. He's always been involved in criminal activity, and he probably always is going to be involved in criminal activity based on his record. The most logical explanation of his operation that night is that he knew a gun was in the car and he was involved in some kind of illegal activity with [Bryon Womack, the passenger in the car with him]. That makes the most sense to me. Not this other nonsense that he tried to sell on the [witness] stand here." The court later noted that the defendant was facing a potential five year sentence, but reasoned that it was going to impose a slightly lesser sentence of forty–eight months because the defendant "got a hefty sentence for the original incident."

The court based its finding of a violation of probation on the defendant's failure to report and constructive possession of the gun in the Lexus, among other things.[5] The defendant argues that the court exceeded its authority in imposing the sentence because the sentence was based on the erroneous finding that he knew there was a gun in the Lexus. As stated in part I of this opinion, there was evidence that the defendant, who was driving the Lexus at the time, made furtive movements and leaned over the center console, in which the gun was located. The court could have found by a preponderance of the evidence that the defendant constructively possessed the gun. Accordingly, the court did not err by taking into consideration the defendant's constructive possession of the gun when revoking the defendant's probation and imposing a forty-eight month sentence.

---

[5] When finding the defendant in violation of probation, the court stated: "I don't accept his explanation of losing contact with probation. He knew he was supposed to report. He didn't report. I don't believe that he didn't know that he was considered in violation. You know, he says he never got a letter, never got a message, never saw the gun, didn't know the car was stolen. And his explanation of the events just—I don't accept his explanation of the reckless operation. The reckless operation was in progress when the police arrived on the scene. And it's more consistent with a person who is involved in some kind of illegal activity and knows that they're going to get

The court did not abuse its discretion when it concluded that the rehabilitative and the beneficial aspects of probation were not being met. The court noted that the defendant, who was forty-seven years old and who had multiple felony convictions, was found in illegal possession of a firearm and was involved in criminal activity with Womack. In imposing the sentence, the court mitigated the potential five year sentence by taking into account the defendant's lengthy sentence for the underlying burglary conviction.

On the basis of the whole record, we conclude that the court properly considered whether the beneficial aspects of probation were being served and, therefore, did not abuse its discretion by revoking the defendant's probation and reinstating a portion of the remainder of the defendant's original sentence.

The appeal is dismissed as moot only as to the claim that there was insufficient evidence to establish that the defendant violated his probation. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

caught and knows that there's a gun in the car. That's what I find. So, he's in violation of his probation."