******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* IJAHMON WALCOTT
## (AC 40252)

DiPentima, C. J., and Alvord and Bear, Js.

*Syllabus*

The defendant, who had been on probation in connection with his conviction of the crimes of assault in the first degree and carrying a pistol without a permit, appealed to this court from the judgment of the trial court revoking his probation and committing him to the custody of the Commissioner of Correction. The defendant's probation was revoked after police found a revolver and narcotics in a closet in a bedroom where the defendant stored his personal belongings, which was located in a residence that the defendant shared with others, including K. The trial court found that the state had established by a preponderance of the evidence that the defendant had violated certain special conditions of his probation and the standard condition of his probation that he not violate any criminal law of this state. Specifically, the court found that the defendant had committed the crimes of possession of a controlled substance and criminal possession of a revolver while he was on probation. *Held* that the defendant could not prevail on his unpreserved claim that there was insufficient evidence to support the trial court's finding that he constructively possessed the narcotics and the revolver and, therefore, that the court abused its discretion by considering that unproven fact during the dispositional stage of the revocation proceeding: there was sufficient evidence to support that court's finding, by a preponderance of the evidence, that the defendant constructively possessed the revolver and narcotics, as the evidence presented, including testimony from a police officer that he and another officer observed the defendant use a key to lock the door of his residence after exiting that place in the morning before the police search of the premises, the defendant's admission that he had been storing his personal belongings in the bedroom where the police found the revolver and narcotics for approximately two months, and K's statement to the police that although his DNA may be found on the revolver and narcotics, those items belonged to the defendant, supported the court's reasonable inference that the defendant had a considerable presence in the premises, was aware of the presence and nature of the narcotics and the revolver, and exercised dominion and control over those items by placing them in the closet in the bedroom where he stored his personal belongings; accordingly, the trial court having properly found that the defendant constructively possessed the revolver and narcotics, the defendant's claim that the court abused its discretion by considering that fact during the dispositional phase of the proceedings necessarily failed.

Argued April 10—officially released September 18, 2018

*Procedural History*

Substitute information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Hon. John F. Mulcahy, Jr.*, judge trial referee; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Dana H. Sanetti*, assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Richard J. Rubino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Ijahmon Walcott, appeals from the judgment of the trial court revoking his probation and imposing a sentence of thirteen years incarceration, execution suspended after four years, with three years of probation. On appeal, the defendant claims that the court abused its discretion by relying on unproven facts when it revoked his probation and sentenced him during the dispositional phase of the violation of probation proceeding. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On September 9, 2005, the defendant pleaded guilty to one count of assault in the first degree, in violation of General Statutes § 53a-59 (a) (3), and one count of carrying a pistol without a permit, in violation of General Statutes (Rev. to 2003) § 29-35 (a). The two convictions arose from an incident that occurred on November 10, 2003, when the defendant was fifteen years old and shot a woman in the chest. The court imposed a total effective sentence of twenty-five years incarceration, suspended after twelve years, followed by five years of probation. In addition to the standard conditions of probation, the sentencing court imposed special conditions of probation. The defendant was released from incarceration on October 20, 2014, and his probationary period commenced.

The standard and special conditions of his probation required, inter alia, the defendant to submit to random urine testing and mental health evaluation and/or treatment, not possess any drugs and/or narcotics, and "not violate any criminal law of the United States, this state or any other state or territory." On October 23, 2014, the defendant signed the conditions of probation form, acknowledging that he read the form, and that he understood the conditions and would abide by them.

On December 7, 2015, the defendant, who was still on probation, was arrested and subsequently charged with, inter alia, criminal possession of a revolver in violation of General Statutes § 53a-217c, and possession of a controlled substance in violation of General Statutes § 21a-279 (a) (1). Thereafter, on March 31, 2016, he was charged with violating the conditions of his probation in violation of General Statutes § 53a-32.

The record reveals that the following events led to the defendant's arrest on December 7, 2015. Officer Robert Fogg, a member of the shooting task force for the Hartford Police Department, testified that he was conducting surveillance in the vicinity of 80 Cabot Street in Hartford on December 7, 2015. He was accompanied by Detective Brian Connaughton from the Windsor Police Department. They were dressed in plain clothes and sat in an unmarked truck preparing to exe-

cute an arrest warrant for Antonio Keane and a search warrant for 80 Cabot Street. Although the defendant was not the target of the search warrant, Fogg and Connaughton observed the defendant leave through the front door of 80 Cabot Street and lock the door behind him with a key. Fogg and Connaughton drove closer to the defendant, determined that he was not Keane, and continued to observe 80 Cabot Street.

The defendant walked past the officers' truck multiple times, and Fogg and Connaughton, believing that the defendant had identified them as police officers, called upon other officers to continue the surveillance of 80 Cabot Street before they left the area. Later that day, officers saw Keane leaving 80 Cabot Street, and took him into custody while other members of the shooting task force secured the house. Fogg and Connaughton returned to 80 Cabot Street with the search warrant, and they joined the other officers. Keane did not have a key on his person, and the officers had to break down the door in order to execute the search warrant.

The officers searched the apartment that is located on the second and third floors, which has two bedrooms on each floor. In one of the bedrooms on the second floor, which Fogg identified as Keane's bedroom, the officers found plastic bags next to a glass container, which contained a razor blade and a digital scale; there was a white residue on the razor blade, scale, and container. In the drawer of a nightstand in Keane's bedroom, the officers found a plate containing a white, rock-like substance, another razor blade, and a second digital scale. Officers also found several individually packaged pieces of a white, rock-like substance. Connaughton performed a field test on the rock-like substances, and they tested positive for the presumptive presence of crack cocaine.

Fogg also testified that, in a pair of athletic shoes in a closet in one of the bedrooms on the third floor, they found a small revolver, a few bullets, and a bag containing a white, rock-like substance; the revolver was sticking out of the right shoe with the bullets resting on top of the shoe, and the white, rock-like substance was protruding from the left shoe. Connaughton performed a field test on the substance, and it tested positive for the presumptive presence of crack cocaine. Fogg further testified that officers found additional ammunition throughout that bedroom, including a loaded magazine for a firearm. In that same bedroom, among various personal items and clothing, the officers also found a letter addressed to the defendant with his address listed as 391 Shaker Road in Enfield, which, Fogg testified, is the location of a prison facility.

After completing the search of the premises, the officers exited the house and observed the defendant playing basketball on the street in front of 80 Cabot Street.

The officers identified the defendant and arrested him on the basis of an unrelated warrant, but they subsequently also charged the defendant with possession of the revolver and narcotics that were found in the third floor bedroom closet at 80 Cabot Street. The defendant signed a form acknowledging that he received *Miranda*[1] warnings and waived his right to an attorney. Fogg then conducted an interview, during which the defendant stated that the clothes and personal items in the third floor bedroom at 80 Cabot Street, the same room in which the revolver and narcotics had been found, belonged to him. Although he stated that his possessions had been there for two months, he said that the revolver, ammunition, and narcotics did not belong to him. Keane, however, told the police that all of the illegal items found at 80 Cabot Street belonged to the defendant, and that the defendant had been living at 80 Cabot Street for more than one year. Keane also stated that his DNA likely would be found on the revolver, ammunition, and drugs because he had handled them in the past.

A probation revocation hearing was held over the course of two days, on September 15 and 28, 2016. On September 28, 2016, the court issued its oral decision. The court found, and the defendant does not contest on appeal, that the state had established by a preponderance of the evidence that the defendant had violated the special conditions of his probation[2] and the standard condition of his probation that he not violate any criminal law of this state. Specifically, the court found "by a preponderance of the evidence and on the reliable and credible evidence and the reasonable inferences to be drawn therefrom" that the defendant committed two crimes while he was on probation: possession of a controlled substance, in violation of § 21a-279 (a) (1), and criminal possession of a revolver, in violation of § 53a-217c (a).

After finding that the defendant violated conditions of his probation, the court proceeded to the dispositional phase of the proceeding. The court heard from the state and defense counsel before issuing its oral decision. The court stated in relevant part: "It's significant also that after beginning probation he violated the conditions almost immediately, almost right away, those conditions dealing with drug treatment and so on, all have been gone into on the record earlier. So, with reference to the [constructive possession] crimes, the possession of a narcotic substance and, of course, the possession of a revolver by a convicted felon, those occurred very early on in probation, during probation, roughly perhaps a little bit over a year when that particular incident occurred with the execution of the search warrant at 80 Cabot Street, and the drugs and the revolver were found. And even before that, while on probation, there was the domestic offense, as the state pointed out, and that involved, I'm told, assaultive conduct. So, right out

of the state's prison and then there were these matters, negative matters, concerning his performance on probation.

* * *

"On the nonmitigating side of this is, as I alluded to, the seriousness of the possession of a revolver by a convicted felon . . . . And this court has an obligation, a very serious obligation, balanced against rehabilitation, and a very serious obligation to undertake to effectuate the protection of society. And the possession of guns, particularly under these circumstances, in a premises which, as far as I can see from the evidence, was almost awash with drugs, illegal drugs. In any event, that's a very serious consideration and a very serious offense.

"Weighing all of those circumstances, it's my opinion that a split sentence is still appropriate. As I said, I recognize the probation officer's position, but I don't think probation should give up quite at this point with somebody this age. And I would be inclined, in imposing a split sentence, to also impose a period of probation as opposed to the special parole, a sensible suggestion also, but I just think that perhaps probation would be more appropriate at this point." The court revoked the defendant's probation and sentenced him to thirteen years incarceration, execution suspended after four years, followed by three years of probation. This appeal followed.

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . .

"To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . .

or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Sherrod*, 157 Conn. App. 376, 381–82, 115 A.3d 1167, cert. denied, 318 Conn. 904, 122 A.3d 633 (2015).

On appeal, the defendant's sole claim is that the court abused its discretion by relying on unproven facts in sentencing him.[3] The defendant argues that there was insufficient evidence to support the court's finding that he constructively possessed the narcotics and the revolver and, therefore, that the court abused its discretion by considering that unproven fact during the dispositional stage of the revocation proceeding.[4] We disagree.

As a preliminary matter, the defendant did not object to the court's consideration of the allegedly unproven facts, and, therefore, he requests that we review his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] The state argues that the record is inadequate for review because "it is not clear from the record whether the defendant's illegal possession of the firearm and narcotics was dispositive of the court's decision to revoke his probation and impose the sentence it ultimately [imposed], in light of its determination that the defendant also had violated the conditions of his probation in a number of other ways as well, based on the domestic assault and his failure to comply with treatment and his possession of narcotics as proven by the failed urine tests." We, however, conclude that the record is adequate for review, and that the defendant's claim is of constitutional magnitude. See *State* v. *Fletcher*, 183 Conn. App. 1, 16, A.3d (2018) ("[w]e will review the claim under *Golding* because the record is adequate for review and the claim implicates the defendant's due process right not to be sentenced on the basis of improper factors or erroneous information"). Accordingly, we proceed to the third prong of *Golding* to determine whether a constitutional violation exists, thereby depriving the defendant of a fair trial. See footnote 4 of this opinion. We conclude that a constitutional violation does not exist.

The following legal principles are relevant to the defendant's claim. Section 21a-279 (a) (1) provides in relevant part that "[a]ny person who possesses or has under such person's control any quantity of any controlled substance . . . shall be guilty of a class A misdemeanor."

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the

character of the substance, knew of its presence and exercised dominion and control over it." (Internal quotation marks omitted.) *State* v. *Ellis T.*, 92 Conn. App. 247, 251, 884 A.2d 437 (2005). "Where . . . the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . [T]he state had to prove that the defendant, and not some other person, possessed a substance that was of narcotic character with knowledge both of its narcotic character and the fact that he possessed it." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Diaz*, 109 Conn. App. 519, 524–25, 952 A.2d 124, cert. denied, 289 Conn. 930, 958 A.2d 161 (2008).

Section 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a . . . revolver when such person possesses a . . . revolver . . . and (1) has been convicted of a felony . . . ."

" 'Possess,' as defined in General Statutes § 53a-3 (2), 'means to have physical possession or otherwise to exercise dominion or control over tangible property . . . .' " *State* v. *Diaz*, supra, 109 Conn. App. 525. "The essence of exercising control is not the manifestation of an act of control but instead it is the act of being in a position of control coupled with the requisite mental intent. In our criminal statutes involving possession, this control must be exercised intentionally and with knowledge of the character of the controlled object. . . . To prove that the defendant constructively possessed the [revolver], it was the state's burden to prove that he knowingly [had] the power and the intention at a given time of exercising dominion and control over [the revolver]. . . . When, as here, the doctrine of non-exclusive possession also is implicated, the state bears the burden of proving that there were incriminating statements or circumstances . . . other than the discovery of the [revolver] in the residence he shared with [others], tending to buttress the inference that he knew of the [revolver's] presence and had control over it." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 525–26.

Because the revolver and the narcotics in this case were not found on the defendant's person, it was necessary for the state to prove that he constructively possessed those items; the defendant claims that the state failed to do so. We disagree.

In its oral ruling, the court found that "all the elements of both crimes have been proven by a fair preponderance of the evidence; that is, on the credible, probative,

and reliable evidence." The court also explained: "Now, both of these crimes are possessory offenses . . . . And the central issue here is constructive possession. It is my view that the credible, probative, and reliable evidence establishes by a preponderance, that is, more probable than not, that [the] defendant knowingly had constructive possession of the cocaine and the revolver and, for that matter, all of the items seized by the [police] officers executing the search warrant on that third floor of the premises."

The court noted several factors indicating that the defendant constructively possessed the revolver and narcotics, including: the officers observed the defendant leave 80 Cabot Street and lock the door behind him with a key; the revolver was "very visible" in a sneaker in the bedroom closet; the officers found a letter addressed to the defendant in the same bedroom in which the revolver and narcotics were found; and, after the defendant had been arrested, he told the officers that he had kept his belongings at 80 Cabot Street for more than two months. On the basis of that evidence, the court concluded that "the reasonable inference is that [the defendant] had control over those premises, that he did, during that period, have considerable presence in those premises. In my opinion, an inference can be drawn that that's where he was residing at that point in time. But in any event, he certainly was in an area where he had dominion and control. I think the key and the letter certainly indicate what I've just said, together with the defendant's statements to the police . . . . As I said, the gun and the drugs, the gun found in a pair of sneakers—again, we're getting into the area of personal belongings, and that's all consistent with the defendant's statement or admission to the police . . . ."

The defendant argues that his "considerable presence" at 80 Cabot Street "does not rise to the level of dominion and control over an area, let alone over items contained within that area. . . . [T]he state did not provide sufficient evidence of a reliable nexus between the defendant and the premises, and certainly not between the defendant and the contraband." The defendant relies on several cases to support his argument. These cases, cited as relevant examples of constructive possession, however, involve appeals from criminal convictions, where the burden on the state is much higher, as it is required to prove possession beyond a reasonable doubt. See, e.g., *State* v. *Nova*, 161 Conn. App. 708, 716–18, 129 A.3d 146 (2015); *State* v. *Gainey*, 116 Conn. App. 710, 719–21, 977 A.2d 257 (2009); *State* v. *Williams*, 110 Conn. App. 778, 783–93, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). By contrast, in a revocation of probation case, the state is required to prove a violation only by a preponderance of the evidence. See, e.g., *State* v. *Milner*, 130 Conn. App. 19, 35, 21 A.3d 907 (2011) ("The court could have

found by a preponderance of the evidence that the defendant constructively possessed the gun. Accordingly, the court did not err by taking into consideration the defendant's constructive possession of the gun when revoking the defendant's probation . . . ."), appeal dismissed, 309 Conn. 744, 72 A.3d 1068 (2013). We, therefore, are not persuaded that the cases relied on by the defendant control or assist us in our resolution of his claim in the present case.

After applying the applicable law to the record before us, we conclude that the court's factual finding that the defendant constructively possessed the revolver and narcotics was not clearly erroneous. The evidence presented established that the defendant had a key to 80 Cabot Street, which both Fogg and Connaughton observed the defendant use to lock the door after exiting that address in the morning before the search of the premises. In addition, the defendant admitted that he had been storing his personal belongings in the third floor bedroom at 80 Cabot Street for approximately two months, and the revolver and narcotics were found in a pair of sneakers in the closet in that third floor bedroom. Moreover, Keane told the police that although his DNA may be found on the revolver and narcotics, those items belonged to the defendant. All of the aforementioned facts support the court's reasonable inference that the defendant had a considerable presence in the premises, was aware of the presence and nature of the narcotics and the revolver, and exercised dominion and control over those items by placing them in the closet in the bedroom where he stored his personal belongings. Consequently, we conclude that there was sufficient evidence to support the court's finding, by a preponderance of the evidence, that the defendant possessed a revolver and narcotics.

Because we conclude that the court properly found, by a fair preponderance of the evidence, that the defendant constructively possessed the revolver and narcotics, the defendant's claim that the court abused its discretion by considering that fact during the dispositional phase of the proceedings necessarily fails. The defendant has failed to demonstrate that a constitutional violation exists.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The court found that the defendant violated the following special conditions of his probation: receive mental health evaluation and/or treatment, as recommended by the Office of Adult Probation; do not possess any drugs and/or narcotics; and submit to random urine tests.

[3] We note that defense counsel appeared to agree that there was sufficient evidence to support the court's findings when, during the dispositional phase of the proceeding, he stated: "With respect to the underlying conduct, you've heard the evidence. Your Honor found by a preponderance of the evidence that he did possess those things. I would submit to Your Honor that there's *obviously evidence that's beyond a preponderance of the evidence that he*

*constructively possessed those things.* But—and I think the state would agree that it's not the strongest case in the world against my client." (Emphasis added.)

[4] Although the defendant claims that the evidence does not support the court's finding that he constructively possessed a revolver and narcotics, he does not claim that the court improperly found that he violated his probation on this ground, likely because the finding of a probation violation was based on multiple grounds. See footnote 1 of this opinion; see also *State* v. *Fowler*, 178 Conn. App. 332, 343–44, 175 A.3d 76 (2017) ("[A] violation of any one condition of probation would suffice to serve as a basis for revoking the defendant's probation. . . . Our law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated." [Internal quotation marks omitted.]), cert. denied, 327 Conn. 999, 176 A.3d 556 (2018). Rather, he focuses on the court's reliance on this ground during the dispositional phase of the revocation hearing.

[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

———————————————