******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MICHAEL ROBERT FORTIN
## (AC 42651)

Alvord, Moll and Devlin, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of manslaughter in the first degree with a firearm and carrying a pistol without a permit, the defendant appealed. The defendant's conviction stemmed from an incident in which he shot and killed the victim following a heated discussion and a brief physical altercation. Prior to trial, the defendant filed a motion to preclude the admission of evidence of certain incidents of prior misconduct, which the state sought to offer to prove the identity of the defendant as the shooter. At the hearing on the motion to preclude, the state conceded that evidence regarding an incident in which the defendant had shot his girlfriend, F, in the eye with a flare gun would not be admissible, and the trial court advised the state that, if it sought to introduce evidence of that incident, it should raise the issue outside the presence of the jury so that the court could assess its admissibility. In addition, the defendant offered an unsigned stipulation that he had shot and killed the victim, but the state refused the defendant's offer to stipulate, and the trial court did not consider it in ruling on the motion. Thereafter, the trial court denied in part the motion to preclude and allowed the state to present to the jury evidence of certain instances of misconduct related to the defendant's prior use of the firearm that was used to shoot and kill the victim. During trial, M, a state's witness, inadvertently testified regarding the flare gun incident. The defendant immediately objected to M's testimony, and the court sustained the objection and instructed the jury to disregard it. At the conclusion of M's testimony, the defendant moved for a mistrial, arguing that M's testimony was prejudicial because, inter alia, F was expected to testify for the state and she had a visible injury to her eye that she sustained during the flare gun incident. The trial court denied the defendant's motion for a mistrial. *Held*:

1. The defendant could not prevail on his claim that the trial court improperly allowed the state to introduce evidence of several instances of misconduct involving his prior use of the firearm that was used to shoot and kill the victim: contrary to the defendant's contention that the misconduct evidence lacked probative value and was unduly prejudicial to him because his offer to stipulate that he had shot the victim with the firearm obviated the state's need to prove identity, the misconduct evidence was indisputably probative to establishing the identity of the defendant as the shooter of the victim, which was an issue that the defendant contested from the inception of the investigation of the victim's death until the hearing on his motion to preclude the admission of that evidence; moreover, the defendant's reliance on *Old Chief* v. *United States* (519 U.S. 172) for the proposition that the trial court erred in not balancing his offer to stipulate with the prejudicial effect of the misconduct evidence was unavailing, as that case was distinguishable from the present case, and the defendant's offer was not a forthright concession that he killed the victim and, therefore, there was no alternative evidence of identity for the trial court to consider in weighing the probative value of the misconduct evidence and its potential prejudice to the defendant.

2. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial after M inadvertently testified regarding the flare gun incident; although M's testimony was improper, the trial court found, and the record supported, that it was not invited by the state and that it was isolated, and, immediately following M's improper reference to the flare gun incident, the court instructed the jury to disregard it, and, therefore, even if M's isolated statement could be view as being unduly prejudicial to the defendant, any danger inherent in its admission would have been cured by the court's instruction, and this court deferred to the trial court's advantageous ability to observe the impact of M's statement on the jury.

3. The defendant could not prevail on his unpreserved claim that his constitutional right to confrontation was violated when the trial court allowed T, a state trooper, to testify that the first selectman of the town of Andover told her that the defendant did not have a temporary town permit to carry the firearm that he used to shoot and kill the victim; the defendant's claim failed under the fourth prong of *State* v. *Golding* (213 Conn. 233) because the admission of T's testimony was harmless beyond a reasonable doubt, as the defendant did not challenge the charge of carrying a pistol without a permit at trial, he did not object to T's testimony or cross-examine her and he testified that he was illegally carrying the subject firearm at the time of the shooting, which admission alone supported the jury's verdict on the charge of carrying a pistol without a permit.

Argued January 7—officially released April 7, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of murder, carrying a pistol without a permit and risk of injury to a child, brought to the Superior Court in the judicial district of Tolland, where the court, *Graham, J.*, denied in part the defendant's motion to preclude certain evidence; thereafter, the matter was tried to the jury before *Graham, J.*; subsequently, the court denied the defendant's motion for a mistrial; verdict and judgment of guilty of the lesser included offense of manslaughter in the first degree with a firearm and of carrying a pistol without a permit, and sentence enhanced for the commission of a class A, B or C felony with a firearm, from which the defendant appealed. *Affirmed.*

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Michael Robert Fortin, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[1] On appeal, the defendant claims that (1) the trial court improperly allowed the state to introduce evidence of several instances of misconduct stemming from his prior use of the firearm that was used to shoot and kill the victim in this case, (2) the trial court abused its discretion by denying his motion for a mistrial after a state's witness inadvertently testified regarding a prior incident involving the defendant's discharge of a flare gun that the state previously had conceded, and the trial court ruled, was inadmissible, and (3) his constitutional right to confrontation was violated when the trial court allowed into evidence certain hearsay testimony that he did not have a permit to carry a firearm. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. At approximately 9 p.m. on July 3, 2015, the defendant rode his motorcycle to Lakeside Drive in Andover to observe a fireworks display at Andover Lake. He parked his motorcycle in the middle of a gravel right-of-way that led to a boat launch and walked to the boat launch to watch the fireworks.

John Totri and Jason Marchand, the victim, lived on Lakeside Drive. Shortly after the defendant parked his motorcycle, Totri and the victim, who had both been drinking alcoholic beverages all day, approached the defendant at the boat launch and demanded that he move his motorcycle from the right-of-way. Following a heated discussion, the defendant agreed to move his motorcycle. As the defendant "took off" on his motorcycle, small rocks were sprayed from the roadway toward Totri and the victim. The victim ran after the defendant but was unable to catch him. Totri and the victim then went to the victim's house to roast marshmallows in his firepit.

Approximately one hour later, while Totri and the victim were sitting by the firepit, the defendant returned to Lakeside Drive. As the defendant dismounted his motorcycle, he heard the voices of Totri and the victim coming from the victim's yard. The defendant approached the victim's yard with his helmet on and "a loaded gun with a round chambered." The victim "bolted out of his chair" and ran into the roadway, toward the defendant. After a brief physical altercation, the defendant fired his gun into the ground. Approximately thirty seconds later, the defendant fired two more shots, both of which hit the victim. The victim ultimately collapsed in his yard, and the defendant fled on his motorcycle. The victim was taken to a hospital

in an ambulance and was pronounced dead shortly thereafter.

On the following day, the defendant, with the assistance of his girlfriend, Carli Fandacone, disposed of his gun and his motorcycle; he threw his gun into a swamp and pushed his motorcycle off a bridge and into the Connecticut River.

The lead case officer on the ensuing investigation, Connecticut State Police Detective Jeffrey Payette, issued a bulletin to law enforcement agencies in the area to be on the lookout for a motorcycle that fled the area of the crime scene on the night of July 3, 2015. Payette undertook an investigation of other incidents involving firearms in the Andover area, which ultimately led him to the defendant, who was arrested on November 17, 2015. By way of a third amended substitute information filed on April 6, 2017, the defendant was charged with murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of § 29-35 (a), risk of injury to a child in violation of General Statutes § 53-21 (a) (1), and commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k.

Following a trial, the jury found the defendant guilty of the lesser included offense of manslaughter with a firearm and carrying a pistol without a permit.[2] The court imposed a total effective sentence of thirty-two years incarceration, followed by ten years of special parole.[3] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in allowing the state to introduce evidence of misconduct involving the defendant's prior use of the firearm that was used to shoot and kill the victim. Specifically, the defendant argues that the court improperly admitted the misconduct evidence because he had offered to stipulate to the fact that he had shot the victim with that firearm, thereby obviating the state's need to prove identity, and, thus, that the misconduct evidence lacked probative value and was unduly prejudicial to him. We are not persuaded.

The following additional background is relevant to our consideration of this claim. On February 22, 2017, the defendant filed a motion in limine to preclude the admission into evidence of, inter alia, four instances of misconduct relating to the firearm that was used to shoot and kill the victim. Specifically, the defendant sought to preclude evidence that (1) on May 21, 2014, he stole that firearm from its lawful owner, (2) on September 25, 2014, he discharged that firearm on Hop River State Park Trail, (3) in the fall of 2014, he threatened another person by pointing that firearm at him, and (4) between the summers of 2014 and 2015, he fired

that firearm. In his motion, the defendant argued that the misconduct evidence was irrelevant and highly prejudicial.

On March 2, 2017, the court held a hearing on the defendant's motion to preclude. At that hearing, defense counsel indicated that he had "prepared a stipulation in which [the defendant] will stipulate that [he] fired the [firearm] that resulted in the death of [the victim]." The court observed, and defense counsel acknowledged, that the stipulation was unsigned. The state refused the defendant's offer to stipulate on the ground that it had the burden to prove beyond a reasonable doubt every element of the crimes with which the defendant was charged and that it was entitled to do so through the introduction of admissible evidence. The state argued that, because there was, in fact, no stipulation, the court could not consider it as alternative evidence in assessing the admissibility of the challenged misconduct evidence. The court agreed with the state, and explained: "I can't deal with theoretical stipulations." The court reasoned: "[I]f the two of you are going to enter a stipulation later . . . then I've got to ask myself . . . how that affects the prejudice versus the probative. . . . I am saying that I'm being asked to rule on these matters in advance of them being presented at trial, and if something significant changes, such as a stipulation that proves out the very facts this evidence is offered for, then I would reserve the right to revisit this because . . . I think it affects the balancing of probative versus prejudicial. . . . So, I'm going to proceed on the assumption [that] there is no stipulation because there is no stipulation yet, and if it turns out the stipulation occurs, then counsel will bring that to my attention because it may affect my ruling." The court and the parties thus proceeded to discuss the probative value versus the prejudicial effect of the offered misconduct evidence in the absence of any stipulation.

The court granted in part and denied in part the defendant's motion to preclude. The court summarized its ruling as follows: "As to the theft of the firearm in question, that it was stolen is—[the] motion [is] granted as to the fact it was stolen, but only to that extent. As to the discharge of the firearm on Hop River State Park Trail, the motion [is] denied. As to the incidents where the defendant pointed a firearm at someone in the fall of 2014, it is—the motion is granted only to the extent of the pointing of the firearm at someone, not otherwise, and the motion is denied as to the extent it is that the defendant possessed and fired a firearm between the summers of 2014 and 2015." The court thus allowed the state to present evidence of the challenged instances of prior misconduct to the jury in accordance with its ruling. The defendant claims on appeal that the trial court erred in so doing.

"Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . [Because] the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only [if] it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Abdus-Sabur*, 190 Conn. App. 589, 603–604, 211 A.3d 1039, cert. denied, 333 Conn. 911, 215 A.3d 735 (2019).

Here, the state offered the challenged misconduct evidence to prove identity, an exception to the general rule that prior misconduct evidence is inadmissible. The state argued that the prior misconduct evidence was probative of identity because each of the four instances of misconduct involved the defendant and his use of the same firearm that was used to shoot and kill the victim.[4] It cannot reasonably be disputed that the misconduct evidence was probative to establishing the identity of the defendant as the shooter of the victim, which was an issue that the defendant had contested from the inception of the investigation of the victim's death until the hearing on his motion to preclude the admission of that evidence, as the defendant denied his presence at the boat launch on the night of July 3, 2015, and disposed of both his firearm and his motorcycle to avoid any connection of those items and himself to the events of that night.

The defendant asserts on appeal that "[his] admission that he fired the [firearm] in self-defense and killed the victim deprived the misconduct [evidence] involving possession of that gun of any probative value on the issue of identity, or at the very least, rendered its probative value so slight that the prejudice was overwhelming." The defendant argues that "the trial court was bound to consider [his] admission when determining the probative value of the misconduct and when weighing against its prejudicial effect." In so arguing, the defendant relies on the United States Supreme Court's decision in *Old Chief* v. *United States*, 519 U.S.

172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). In that case, the petitioner, Johnny Lynn Old Chief, had been charged pursuant to a federal statute that made it a crime for any person who had been convicted of a crime punishable by imprisonment for more than one year to possess a firearm. Id., 174. Old Chief offered to stipulate that he previously had been convicted of such a crime. Id., 176. Old Chief also proposed that the court instruct the jury that he "ha[d] been convicted of a crime punishable by imprisonment for a term exceeding one year." (Internal quotation marks omitted.) Id. The prosecutor declined to stipulate, and the District Court ruled that he was not required to do so. Id., 177. At trial, the prosecutor presented evidence that Old Chief previously had been convicted of assault and that such assault resulted in serious bodily injury to the victim. Id. On appeal, the United States Supreme Court concluded that, because, under the relevant statute, "[t]he most the jury need[ed] to know [was] that the conviction admitted by [Old Chief fell] within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission"; id., 190–91; "the general presumption that the prosecution may choose its evidence" did not apply. Id., 191. Accordingly, the court concluded that, because Old Chief had offered to stipulate to the prior conviction, the admission into evidence of the record of conviction of assault was unduly prejudicial and constituted an abuse of discretion. See id., 191–92.

This case is distinguishable from *Old Chief* in that the defendant here did not, as he now contends, offer an "unequivocal admission" that he shot and killed the victim. Rather, he offered to stipulate to those facts by presenting to the trial court a purported stipulation that neither he nor the state had signed. Although Old Chief also offered to stipulate, he, in fact, presented the court with a judicial admission of his felon status. Old Chief provided to the court an instruction to be read to the jury as evidence of that admission, presumably during the state's case-in-chief, thus obviating the state's burden of proving the defendant's felon status. Here, the defendant claimed, for the first time at the hearing on his motion to preclude, that he was claiming self-defense, and, thus, that the misconduct evidence was unnecessary because he would stipulate that he shot and killed the victim. The defendant did not offer an admission of these facts; he did not propose a jury instruction that the facts had been proven beyond a reasonable doubt. He, nevertheless, argues that the trial court was required to weigh his offer to so stipulate as alternative evidence.[5] The defendant's offer consisted of an unsigned stipulation and the representation that he would testify that he shot the victim. A judicial admission is a voluntary and knowing concession of fact by a party or a party's attorney occurring during judicial proceedings. See *Kanopka* v. *Kanopka*, 113 Conn. 30,

38–39, 154 A.144 (1931). Judicial admissions can take the form of a stipulation but can also be concessions by a party or an attorney. See *King* v. *Spencer*, 115 Conn. 201, 204, 161 A. 103 (1932); see generally E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) §§ 8.13.2 (c) and 8.13.3 (a), pp. 522, 523–25. The defendant's offer was not a forthright concession that he killed the victim, and, consequently, there was no alternative evidence of identity for the trial court to consider in weighing the probative value of the misconduct evidence and its potential to prejudice the defendant.

We further note that the ruling in *Old Chief* was confined to Old Chief's legal status as a felon, versus evidence offered to prove "some issue other than status . . . i.e. . . . identity . . . ." (Internal quotation marks omitted.) *Old Chief* v. *United States*, supra, 519 U.S. 190. In *Old Chief*, "the issue [was] not whether concrete details of the prior crime should come to the jurors' attention but whether the name or general character of that crime is to be disclosed. Congress, however, has made it plain that distinctions among generic felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute." Id. The court in *Old Chief* explained: "The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions. Finally, the most obvious reason that the general presumption that the prosecution may choose its evidence is so remote from application here is that proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach." Id., 190–91.

Here, unlike the statute at issue in *Old Chief*, which required only that the prosecution prove that Old Chief previously had been convicted of any felony, the relevant crime with which the defendant was charged in this case required the state to prove beyond a reasonable doubt that the defendant shot and killed the victim. Under these circumstances, the "standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the [g]overnment chooses to present it" clearly applies. Id., 186–87. Here, the proof of the identity of the defendant as the shooter

was crucial to the narrative of the state's case, even if the defendant later admitted in his own testimony that he shot and killed the victim, but that he did so in self-defense.

On the basis of the foregoing, we conclude that the defendant's reliance on *Old Chief* for the proposition that the court erred in not balancing his offer to stipulate with the prejudicial effect of the challenged misconduct evidence is unavailing. Accordingly, the defendant's challenge to the admission of that evidence must fail.

## II

The defendant next claims that the trial court abused its discretion by denying his motion for a mistrial after a state's witness inadvertently testified regarding a prior incident involving the defendant that the state previously had conceded, and the trial court ruled, was inadmissible. Specifically, the defendant claims that the court should have ordered a mistrial after Dwayne Mitchell, the defendant's former cellmate, testified that the defendant had previously shot Fandacone in the eye with a flare gun, in contravention of the court's pretrial ruling. We disagree.

The following additional facts are relevant to this claim. On February 22, 2017, the defendant filed a motion in limine to preclude, inter alia, evidence that the defendant shot Fandacone with a flare gun on February 23, 2015. Due to that incident, Fandacone sustained an injury resulting in the loss of her right eye, requiring her to wear a prosthetic eye. At a hearing on the motion in limine, the state conceded that the flare gun incident would not be admissible in its case-in-chief. The trial court advised the state that, if it sought to introduce evidence of the flare gun incident, it should raise the issue outside the presence of the jury so that the court could assess its admissibility.

During the trial, the jury heard about the flare gun incident during the state's direct examination of Mitchell. While discussing the various conversations that Mitchell had with the defendant, the state asked Mitchell to "take us through this series of conversations, how it evolves from getting out of the country to more." Mitchell testified that he asked the defendant what was "going on" besides his assault charge that was causing him to want to get out of the country. Mitchell stated that the defendant "said something about a murder . . . somebody being shot." He said that they started talking about the assault and "that's when [the defendant] told me about shooting his girlfriend with a flare gun." The defendant immediately objected to Mitchell's testimony, and the trial court sustained the objection, instructing the jury to "disregard the last answer in its entirety. You will remove it from your minds, treat it as though you'd never heard it."

After Mitchell concluded his testimony, the defendant

moved for a mistrial, arguing that the testimony about the flare gun incident was prejudicial because it "involved violence with a gun" and because Fandacone was expected to testify for the state and she had a visible injury to her eye that was sustained during the flare gun incident. The prosecutor countered that the testimony about the flare gun incident was not solicited, the court immediately gave a curative instruction, and Fandacone's injury was not visible. The trial court denied the motion for a mistrial on the ground that it had immediately given the jury a curative instruction, and that "the brief mention of the flare gun incident was not so prejudicial that it precludes a fair trial and did not cause substantial and irreparable prejudice to the defendant's case. . . . [T]he court's curative [instruction] obviates any prejudice that did occur."

At the conclusion of the trial, the court reminded the jury that it had ordered certain testimony and comments stricken during the trial and instructed: "You should disregard that testimony and those comments . . . and you must not give them any weight whatsoever in your deliberations." The defendant now challenges the denial of his motion for a mistrial.

"[T]he principles that govern our review of a trial court's ruling on a motion for a mistrial are well established. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In our review of the denial of a motion for [a] mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion. . . .

"In reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . Therefore, [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required." (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 628, 175 A.3d 514 (2018).

On appeal, the defendant argues that the trial court abused its discretion when it denied the motion for a mistrial after Mitchell "blurted out that the defendant

shot his girlfriend in the eye with a flare gun." The defendant contends that he was prejudiced by Mitchell's testimony because the jury would be able to observe that, as a result of the defendant shooting her in the eye with a flare gun, Fandacone had a glass eye. Contrary to the defendant's assertions, Mitchell did not testify that the defendant shot Fandacone in the eye; nor was there any mention of any injury to Fandacone. The record likewise does not support the defendant's claim that Fandacone's eye injury was visible or noticeable to the jury.

Although Mitchell's testimony was improper, the court found, and the record supports, that it was not invited by the state and was an isolated statement. Immediately following the improper reference to the flare gun incident, the court instructed the jurors to disregard it and to put it out of their minds. "[E]ven improperly admitted evidence of this nature may not prove to be harmful when the court takes adequate corrective measures." *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 23, 60 A.3d 222 (2013). "It is well settled that the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary . . . . Thus, [a] jury is normally presumed to disregard inadmissible evidence brought to its attention unless there is an overwhelming probability that the jury will not follow the trial court's instructions and a strong likelihood that the inadmissible evidence was devastating . . . ." (Internal quotation marks omitted.) *Modaffari* v. *Greenwich Hospital*, 157 Conn. App. 777, 785, 117 A.3d 508, cert. denied, 319 Conn. 904, 122 A.3d 1279 (2015). Moreover, "[t]he trial judge can gauge the tenor of the trial . . . and can detect those factors, if any, that could improperly have influenced the jury." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.3d 398 (1995). Thus, even if Mitchell's isolated statement referencing the flare gun incident could be viewed as being unduly prejudicial to the defendant, any danger inherent in its admission would have been cured by the court's instruction, and we defer to the trial court's advantageous ability to observe the impact of that isolated statement on the jury. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

### III

Finally, the defendant claims that his sixth amendment right to confrontation was violated when the court allowed a state trooper to testify that the first selectman of the town of Andover had told her that the defendant did not have a temporary town permit to carry the firearm that he used to shoot and kill the victim. We are unpersuaded.

Brianna Tassinari, a Connecticut state trooper assigned to the special licensing and firearms unit, testi-

fied that there was no record showing that the defendant possessed a state permit to carry a pistol or revolver on July 3, 2015. Tassinari conducted a further check with the town of Andover, the defendant's place of residence, to ascertain whether the town had issued a temporary sixty day permit during that time period. Tassinari testified that she "contacted the first selectman directly, and he said that—it had neither been issued nor denied at that time." The defendant did not object to Tassinari's testimony.

The defendant claims on appeal that Tassinari's testimony constituted testimonial hearsay, the admission of which violated his constitutional right to confrontation and deprived him of a fair trial. Because the defendant's claim is unpreserved, we review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[6] as the defendant requests in his appellate brief. Even if we assume, arguendo, that Tassinari's testimony was inadmissible testimonial hearsay that violated the defendant's right to confrontation, we conclude that his claim fails under the fourth prong of *Golding* because any alleged violation was harmless.

"Whether a constitutional violation is harmless in a particular case depends upon the totality of the evidence presented at trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the [evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [evidence] . . . and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . The state bears the burden of proving that the error is harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Smith*, 156 Conn. App. 537, 561–62, 113 A.3d 103, cert. denied, 317 Conn. 910, 115 A.3d 1106 (2015).

Here, the defendant did not challenge the charge of carrying a pistol without a permit at trial. As noted, the defendant did not object to Tassinari's testimony nor did he cross-examine her or challenge her testimony in any other way. In fact, the defendant testified that he was "illegally carrying" the gun with which he shot the victim on July 3, 2015.[7] The defendant's admission alone supports the jury's guilty verdict on the charge of carrying a pistol without a permit.[8] We thus conclude that the admission of Tassinari's testimony regarding her conversation with the first selectman of the town of Andover was harmless beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury acquitted the defendant of murder and risk of injury to a child.

[2] The jury also found, pursuant to § 53-202k, that the defendant committed manslaughter using a firearm.

[3] The court enhanced the sentence for the manslaughter conviction in accordance with § 53-202k.

[4] The state represented to the court that the bullet casings recovered from the scene of each of the locations where the instances of misconduct occurred matched the bullet casings recovered from the crime scene in this case.

[5] That evidence, however, would have been presented to the jury only when and if the defendant himself testified. Of course, because the state could not compel the defendant to testify during the presentation of its case, it would have had to rest its case without that evidence and gambled on the defendant so testifying. At oral argument before this court, counsel for the defendant acknowledged this potential issue but suggested that the state could have moved to reopen the evidence if the defendant failed to testify in accordance with the proposed stipulation.

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] Although the arguments of counsel are not evidence, it is noteworthy that defense counsel acknowledged in his closing argument that the defendant "should not have had that gun."

[8] The defendant argues that his admission could have been interpreted by the jury as pertaining to the fact that he had stolen the firearm. Although that is one possible, albeit unlikely, interpretation of the defendant's testimony, "on appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crewe*, 193 Conn. App. 564, 570, 219 A.3d 886, cert. denied, 334 Conn. 901, 219 A.3d 800 (2019).

———————————————