******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY
ORLANDO CREWE
(AC 40882)

Keller, Moll and Beach, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of possession of a narcotic substance, the defendant appealed to this court, claiming that the evidence was insufficient to support his conviction. The defendant's conviction stemmed from an incident in which two police officers, C and R, while patrolling an area known for drug use, located the defendant and two other individuals, Y and M, inside of a van that was parked behind bushes. After C observed two bundles of heroin on the center console next to the defendant's left leg, the police conducted a search of the van, which revealed the presence of heroin. Heroin was also found on the person of M. In prosecuting the case, the state pursued the theory that although the defendant did not physically possess narcotic substances on his person at the time of the arrest, he constructively possessed at least some of the narcotics found in the van. *Held* that there was sufficient evidence for the jury to draw a reasonable inference that the defendant constructively possessed at least some of the narcotics to support the defendant's conviction, as the jury reasonably could have inferred, on the basis of the totality of the circumstances, that the defendant knew of the presence of the narcotics in the van and exercised dominion and control over the narcotics: C testified that the van was parked in the rear of an otherwise vacant parking lot in broad daylight and was concealed by a cluster of bushes so that it was not visible from the street, the area was known for traffic in narcotics, the location of the van raised C's suspicions, the defendant quickly reached behind the driver's seat as C approached the van, and a subsequent search of the vehicle revealed that a large bag containing small rubber bands and a white powder that later tested positive for heroin was present where the defendant had reached, which supported the inference that the defendant hastily attempted to conceal the substance he knew was illegal and exercised dominion and control over it; moreover, other evidence found at the scene, as well as the wealth of evidence seized by the officers at the time of the arrest and the testimony of the witnesses, further provided a sufficient basis for the jury reasonably to find that the defendant knew that heroin was in the van and that he exercised dominion and control over at least a portion of it.

Argued March 7—officially released October 15, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of possession of a narcotic substance, possession of a narcotic substance with intent to sell, and conspiracy to possess a narcotic substance with the intent to sell, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Klatt, J.*; verdict of guilty of possession of a narcotic substance; thereafter, the court denied the motion filed by the defendant for a judgment of acquittal; judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Timothy H. Everett*, assigned counsel, with whom were *Adam Antar*, certified legal intern, and, on the brief, *Karen Mitchell*, certified legal intern, *Julie Moscato*, certified legal intern, and *Uriel Lloyd*, certified legal intern, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Robert F. Mullins*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Jeffrey Orlando Crewe, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance in violation of General Statutes § 21a-279 (a). The defendant's sole claim on appeal is that the evidence presented at trial was insufficient to support his conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 18, 2014, Hamden Police Officers Greg Curran and Enrique Rivera were patrolling by bicycle in the area of Dixwell Avenue and the Farmington Canal Trail (trail). The officers were assigned to this specific area in response to reports of bicycle thefts and drug use by teens and young adults. At approximately 6:12 p.m., Curran and Rivera observed a young man walk across the trail in a westerly direction toward Dixwell Avenue and cut through a hole in a six-foot fence that separated the trail from the adjacent property. Rivera, who was familiar with the cut in the fence, pointed it out to Curran because he thought knowledge of the hole might be useful in a future pursuit situation.

The officers proceeded through the hole in the fence and entered an adjacent parking lot situated behind several businesses. Upon approaching the parking lot, Curran noticed a van parked behind bushes that concealed the van's presence from passersby on Dixwell Avenue. Curran testified that "[i]t was odd for them to be sitting there so [he] went over to check on them." As Curran approached the van he could see that there were two people in the front seats.[1] As Curran approached the van, the front seat passenger, later identified as the defendant, quickly reached down behind the driver's seat. Curran, for safety concerns, asked the defendant what he was reaching for. In response, the defendant held up a used car magazine.

As Curran was talking to the defendant, he noticed a third individual, later identified as JonMichael Young, in the back seat. At that point, Young reached down toward his seat, but Curran asked him to place his hands on the headrest in front of him. He complied. Curran questioned the driver, later identified as Lachee McGee, as to why they were parked in that area. She said that they were looking for frogs in a nearby puddle. As Curran was talking to the occupants, he observed two bundles of heroin on the center console next to the defendant's left leg.[2] At this point, Rivera approached the van on bicycle and Curran said "104" to him, which was a police signal indicating that drugs were present.

Curran asked the defendant to exit the vehicle and stand near Rivera, and he complied. As the defendant exited the vehicle, Curran stood at the driver's window. He testified that McGee looked down at the center

console and, seeing the bundles of heroin, picked up the used car magazine that the defendant had displayed and placed it on top of the bundles of heroin.[3] At this point, Curran asked McGee to turn over the keys to the vehicle. Curran then was able to take possession of the drugs that he had seen on the center console.[4] The remaining occupants of the van were removed from the vehicle and were detained by other officers who had arrived on the scene.[5] The police searched the defendant and found nothing of note on his person.

When McGee exited the van and was patted down, police observed a small pink glassine bag sticking out of the front of her pants. The bag resembled the bags found on the center console. When McGee was asked if she had any other drugs in her possession, she answered positively and said that she had shoved drugs down the front of her pants. A female officer who had been called to the scene retrieved the drugs from the front of McGee's pants. The officers seized nine bags of narcotics from the person of McGee. Curran continued to search the vehicle and discovered several other bags of heroin on top of the center console, as well as a bottle of a substance known as Super Mannitol.[6] In total, twenty-five pink glassine bags were retrieved from the center console. A search of the back seat revealed a white dinner plate, two metal strainers, sixty pink glassine bags each filled with a substance that later field-tested positive as heroin, and a Ziploc type of bag with a large amount of the same substance. Rivera also found bags stuffed between the seats in the rear passenger area of the van where Young had been sitting. On the basis of his training and experience, Curran believed that he had interrupted the occupants while they were mixing the heroin with the Super Mannitol in order to package the narcotics for sale.

The police seized ninety-four small bags and one larger bag, all containing heroin. At trial, the seized evidence was introduced as five exhibits as follows: (1) twenty-five pink glassine bags containing powder that tested positive for heroin and Super Mannitol and weighed 1.09 grams; (2) sixty pink glassine bags that tested positive for heroin and weighed 2.415 grams and contained Super Mannitol; (3) a Ziploc bag containing powder that tested positive for heroin and weighed 1.892 grams; (4) a white bottle containing Super Mannitol, a mixing agent, which contained no controlled substance; and (5) nine pink glassine bags containing powder that tested positive for heroin and weighed .399 grams.

The defendant was charged with possession of a narcotic substance in violation of § 21a-279 (a), possession of a narcotic substance with the intent to sell in violation of General Statutes § 21a-277 (a), and conspiracy to possess a narcotic substance with the intent to sell in violation of General Statutes §§ 53a-48 and 21a-277 (a).

A jury convicted the defendant of possession of a narcotic substance and acquitted him of the remaining two counts. The court imposed a sentence of seven years of incarceration, execution suspended, and three years of probation.

On appeal, the defendant claims that the evidence at trial was insufficient to sustain his conviction of possession of a narcotic substance on the theory of nonexclusive constructive possession. The state argues that there was ample evidence that the defendant knew the character of the narcotic substances and exercised dominion and control over at least some of the narcotics in the vehicle. We agree with the state.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [finder of fact] if there is sufficient evidence to support the [finder of fact's] verdict." (Internal quotation marks omitted.) *State* v. *Andriulaitis*, 169 Conn. App. 286, 292, 150 A.3d 720 (2016).

Section 21a-279 (a) (1) provides: "Any person who possesses or has under such person's control any quantity of any controlled substance, except less than one-half ounce of a cannabis-type substance and except as authorized in this chapter, shall be guilty of a class A misdemeanor."

"[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all evidence proves the defendant guilty of all elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact . . . but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw

whatever inferences from the evidence or facts established by the evidence [that] it deems to be reasonable and logical. . . .

"Finally, on appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Leniart*, 166 Conn. App. 142, 170, 140 A.3d 1026 (2016), rev'd on other grounds, 333 Conn. 88,    A.3d    (2019).

In the prosecution of the present case, the state pursued the theory that, although the defendant did not physically possess narcotics on his person at the time of the arrest, he constructively possessed at least some of the narcotics in the van. "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control over them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . [T]he state had to prove that the defendant, and not some other person, possessed a substance that was of narcotic character with knowledge both of its narcotic character and the fact that he possessed it." (Citation omitted; internal quotation omitted.) *State* v. *Walcott*, 184 Conn. App. 863, 873, 196 A.3d 379 (2018).

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts

and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . .

"[P]roof of a material fact by inference from the circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether the inference is so unreasonable as to be unjustifiable. . . . In other words, the inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 518–19, 782 A.2d 658 (2001).

Additionally, "[w]e do not sit as the 'seventh juror' when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt. Moreover, [i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994).

In the present case, there was sufficient evidence to support the inference that the defendant constructively possessed narcotics. Curran testified that the van was parked in the rear of an otherwise vacant parking lot in broad daylight and was concealed by a cluster of bushes so that it was not visible from the street. The area was known for traffic in narcotics. The location of the van raised Curran's suspicions, as he thought it was unusual for a vehicle to be parked in such a manner. The secluded and screened location could have been selected to avoid detection. Additionally, as Curran approached the vehicle, the defendant quickly reached behind the driver's seat. A subsequent search of the vehicle revealed that a large Ziploc bag containing small rubber bands and a white powder that later tested positive for heroin was present where the defendant had reached.[7] The evidence seized from behind the driver's seat further supported the inference that the defendant

hastily attempted to conceal the substance he knew was illegal and exercised dominion and control over it.

Other evidence found at the scene further supported an inference that the defendant exercised dominion and control over at least some of the narcotics. Located directly next to the defendant near the center console of the vehicle were two bundles of heroin, several individual bags of heroin, and a bottle of Super Mannitol. Additionally, a subsequent search of the back seat of the vehicle yielded a white dinner plate, two metal strainers, sixty pink glassine bags filled with heroin, and a larger Ziploc type of bag that also contained heroin. These items customarily were used in the packaging of heroin. In total, ninety-four individual small glassine bags were found, along with the larger Ziploc type of bag. Curran testified that he believed that he had interrupted the occupants of the van while they were using the sifters in the process of mixing the heroin with the Super Mannitol to package the narcotics for sale.

We conclude that there was sufficient evidence for the jury to draw a reasonable inference that the defendant constructively possessed at least some of the narcotics found in the van. As noted, this court gives deference to inferences made by a jury, so long as those inferences are not so unreasonable as to be unjustifiable. The wealth of evidence seized by the officers at the time of arrest and the testimony of the witnesses provided a sufficient basis for the jury reasonably to find that the defendant knew that heroin was in the van and that he exercised control over at least a portion of it. Although some factors, viewed in a vacuum, might militate against a finding of constructive possession, the jury reasonably could have inferred on the basis of the totality of the circumstances that the defendant knew of the presence of the narcotics in the van and that he exercised dominion and control over narcotics.[8]

The defendant relies primarily on *State* v. *Fermaint*, 91 Conn. App. 650, 881 A.2d 539, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005), to support his contention that the evidence presented at trial was insufficient to establish that he was in constructive possession of the heroin found in the van at the time of his arrest. In *Fermaint*, the police received a tip from a confidential informant that the owner of a vehicle possessed crack cocaine and that she was accompanied by two males, one of whom the informant identified as "Hector." Id., 652. After locating and stopping the vehicle, officers observed the occupants of the vehicle engaging in furtive movements, including the defendant's bending from the back seat toward the front seat passenger. Id. As one officer approached, the front seat passenger was observed putting something in her pants. Id. An officer observed several crumbs of a rock like substance, which later tested positive for cocaine, on the back seat next to the defendant. Id., 652–53. The officer

testified that it was possible that the defendant could have sat in the back seat without noticing the crumbs. Id., 653 n.3. A green leafy substance, later found to be marijuana, was found in the front carpet area. Id., 653. A plastic bag containing a large rock like substance, which tested positive for cocaine, and $120 were found on the person of the front passenger. Id. An address book and $2 were found on the person of the defendant, but no drugs. Id., 653. This court reversed the trial court's judgment revoking the defendant's probation. Id., 650. It held that the minimal nexus between the defendant and the drugs, along with the perhaps ambiguous movements observed by the officers, was insufficient to establish constructive possession of a narcotic substance. Id., 662–63.

Review of a claim of insufficient evidence is necessarily fact specific and, as stated previously, the evaluation of the strength of inferences involves an exercise of judgment. The facts of the present case are different from those of *Fermaint*. We previously noted that "[w]here the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control over them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Walcott*, supra, 184 Conn. App. 873. Sufficient incriminating circumstances exist in the present case. As in *Fermaint*, the defendant here moved furtively upon being approached by police, but there was considerably more evidence that he was aware of the presence of heroin. Unlike in *Fermaint*, the defendant was found in a vehicle that was parked in an unusual location in an area known for drug traffic and was concealed from the street by bushes. Further, the amount of narcotics located next to the defendant in *Fermaint* appeared to have been trace amounts that easily could have been overlooked; here, two bundles of heroin, each containing ten individual baggies, were found immediately next to the defendant's leg. A bottle of Super Mannitol was located next to the defendant. Other items commonly used in the packaging of heroin were found in the van.

Viewing the evidence in its totality and in the light most favorable to sustaining the jury's verdict, we conclude that there was sufficient evidence for the jury reasonably to have drawn the inference that the defendant constructively possessed heroin.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Curran testified that the weather was bright.

[2] Curran had received special training on how narcotics are packaged and how to identify narcotics. Curran testified that the bundles of heroin he observed on the center console of the van were packed in pink glassine bags.

[3] Curran further testified that McGee appeared very nervous when Curran asked the defendant to exit the van.

[4] While Curran was taking possession of the drugs on the center console, his finger hit one of the bundles and knocked it to the passenger side floor. He was able to retrieve this bundle upon a subsequent search of the car.

[5] Because they were on bicycles and did not have any way to secure the detained individuals, Curran and Rivera requested backup.

[6] Curran testified that Super Mannitol is commonly used as a mixing agent that is added to increase the volume of heroin.

[7] Rivera found a white dinner plate and two metal sifters behind the driver's seat.

[8] We also note that the other two occupants of the van likewise attempted hastily to conceal narcotics from the officers. As stated in *United States* v. *Batista-Polanco*, 927 F.2d 14, 18 (1st Cir. 1991), "the factfinder may fairly infer . . . that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes."

_____