******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* SEAN JACKSON
## (AC 41916)

Alvord, Bright and Beach, Js.

*Syllabus*

The defendant, who had been found to be in violation of probation, appealed to this court from the judgment of the trial court revoking his probation and sentencing him to six years of incarceration. While the defendant had been serving his probationary term, he was arrested and charged with possession of a controlled substance and possession of a controlled substance with intent to sell. The defendant was thereafter charged with violation of probation on the basis of this arrest, as well as two incidents in which he failed to report to the Office of Adult Probation. *Held*:

1. The defendant could not prevail on his claim that there was insufficient evidence to support a finding that he violated his probation because there was insufficient evidence to prove that he had constructive possession of the narcotics that formed the basis for his arrest, and the two instances in which he failed to report to the Office of Adult Probation were de minimis: the state presented sufficient evidence to buttress an inference that the defendant constructively possessed narcotics, specifically, evidence was presented that the police, while conducting surveillance of an apartment building on the basis of a confidential informant's tip that an individual named J was selling narcotics there, observed S, who had a history of drug related offenses, drive up to the building, and the defendant, the passenger in S's vehicle, went into the building and returned within five minutes, and the police, after conducting a motor vehicle stop, subsequently found a razor blade and narcotics in the front seat of S's vehicle, leading the court reasonably to have inferred that the defendant returned to the vehicle and placed the narcotics on the front seat with the intention that he and S would use or distribute them and, furthermore, sufficient evidence supported the finding of a violation of probation on the basis of two instances in which the defendant failed to report to the Office of Adult Probation.

2. The defendant's unpreserved claim that hearsay testimony was admitted at his probation revocation hearing in violation of his due process rights was not reviewable pursuant to *State* v. *Golding* (213 Conn. 233), and the claimed error was not so obvious and egregious that it required reversal under the plain error doctrine; the defendant did not request that the court conduct a balancing test pursuant to *State* v. *Shakir* (130 Conn. App. 458), when H, a police officer, testified that K, a detective, had received information from a confidential source, the state had no notice of the defendant's due process claim and, accordingly, did not present evidence regarding its reasons for not producing K at the hearing, and, therefore, the defendant failed to sustain his burden of providing an adequate record to review his claim; moreover, the court did not abuse its discretion in admitting K's hearsay statements, as the court was not presented with any evidence that cast doubt on the reliability of K's statements to H, and defense counsel had the opportunity to question H on cross-examination regarding why K had deemed the information from the confidential informant reliable but did not do so; thus, the court was presented with testimony that contained minimal indicia of reliability.

3. The trial court did not abuse its discretion in imposing a sentence of six years of incarceration; the court concluded that the defendant's behavior was inimical to his own rehabilitation and the safety of the public and concluded that it did not believe that any further purpose could be served by continuing the defendant's probation, specifically expressing concern that, although the defendant's girlfriend testified that he was providing support for their four month old daughter and assistance to her as she recovered from a car accident, he was engaging in criminal activity while a suspended sentence of eight and one-half years remained outstanding.

Argued January 8—officially released June 30, 2020

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Hartford, where the case was transferred to the judicial district of New Britain; thereafter, the case was tried to the court, *Graham, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, with whom was *Edward Duarte*, former certified legal intern, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Christian M. Watson*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Sean Jackson, appeals from the judgment of the trial court revoking his probation and imposing a sentence of six years of incarceration. On appeal, the defendant claims that (1) the evidence was insufficient to support a finding that he violated his probation, (2) the court erred in admitting hearsay testimony at the probation revocation hearing, and (3) the court abused its discretion when it imposed a sentence of six years of incarceration. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the defendant's claims on appeal. On June 21, 2006, the defendant pleaded guilty to one count of robbery in the first degree and one count of conspiracy to commit robbery in the first degree, and was sentenced to twenty years of incarceration, execution suspended after ten years, followed by five years of probation.[1] On January 23, 2013, the defendant was released from incarceration and began serving his probation.

On September 23, 2013, the defendant was arrested for assault in the third degree and disorderly conduct. On November 12, 2013, the court found the defendant in violation of probation on the basis of that arrest. The court revoked the defendant's probation and imposed a new sentence of ten years of incarceration, execution suspended after eighteen months, followed by fifty-four months of probation.[2] On January 16, 2015, the defendant was released from incarceration and began serving the new term of probation. The conditions of probation that applied to the defendant when he was released on January 16, 2015, included a requirement that he not violate any criminal law of the United States, the state of Connecticut or any other state or territory, and a requirement that he report to the Office of Adult Probation as directed by the probation officer. On April 26, 2017, the defendant was arrested and charged with possession of a controlled substance in violation of General Statutes § 21a-279 (a) (1) and possession of a controlled substance with intent to sell in violation of General Statutes (Rev. to 2017) § 21a-278 (b). On June 15, 2017, the defendant was charged with violation of probation on the basis of this arrest as well as two incidents in which he failed to report to the Office of Adult Probation.

The trial court held a hearing on the violation of probation charge on February 5, 2018. At the hearing, Joseph Mena, the defendant's probation officer, testified that the defendant had failed to report to the Office of Adult Probation on October 15, 2015, and July 7, 2016. These instances were recorded as "no call, no-show," meaning that the defendant neither notified his probation officer that he was not going to report nor

followed up after the missed appointment. Mena further testified that the Office of Adult Probation did not initiate violation of probation proceedings solely on the basis of these failures to report.[3]

Joseph Halt, who was employed as a police officer with the city of New Britain in 2017, testified regarding the circumstances of the defendant's arrest on April 26, 2017. Halt testified that, on that date, he and Larry Smith, a detective, conducted surveillance of an apartment building located at 59 Daly Avenue in New Britain. The surveillance was undertaken because of information received from a confidential informant that an individual nicknamed J, later identified as Jeremy Lawrence, was selling crack cocaine from his apartment on the first floor of 59 Daly Avenue.[4] While conducting the surveillance, Halt observed a 2013 black Toyota Camry pull up to the building. A passenger got out of the vehicle and went into the building. The passenger exited the building within five minutes and returned to the vehicle. Halt testified that, on the basis of his training and experience, such behavior was indicative of possible street sales or narcotic sales.

Halt testified that after the passenger returned to the vehicle, the car began to drive away, and he and Smith followed it. After observing two motor vehicle violations, they stopped the vehicle. Once the vehicle had pulled over, Smith approached the driver's side and Halt approached the passenger side. As Halt approached the vehicle, he observed the driver, later identified as Sean Jackson, Sr., the defendant's father (Jackson), shifting in his seat. When Halt and Smith asked the occupants of the vehicle where they were coming from, the passenger, later identified as the defendant, explained that they had come from Hartford to visit J. Upon inquiry, the defendant did not explain why his visit with J was so brief. Jackson indicated that he had just dropped off his son and they were on their way back. Smith asked the defendant to exit the vehicle so that he and Jackson could be interviewed separately. After the defendant exited the vehicle, Halt observed Jackson reaching between the seat and the center console. Halt also observed that Jackson had a pocketknife on his right hip, which Jackson handed to Halt upon request.

After Jackson handed the pocketknife to Halt, Halt observed Jackson reaching for the center console again. Halt asked Jackson to exit the vehicle and, once he had done so, Halt searched that area of the vehicle and found an "untied bag with [an] off-white, rock-like substance." A field test of the substance revealed the presence of cocaine, later determined to weigh 1.9 grams. The area where the substance was found in the vehicle was "within an arm's reach" of the defendant. The police also found a razor blade in a small compartment of the vehicle between the driver's seat and the door. Again, on the basis of his training and experience, Halt

testified that 1.9 grams of crack cocaine would be split up by using a razor blade or some sort of sharp object.

Neither the defendant nor Jackson claimed ownership of the cocaine. They both were arrested for possession of narcotics and possession of narcotics with intent to sell. Halt testified that the defendant and Jackson were arrested because they both had constructive possession of the cocaine, which was "well within both of their reach." The defendant had $672 in various denominations in his possession at the time of his arrest. The money was divided and the defendant had $75 in one pocket and $595 in another pocket.[5] The money was not in a wallet. Halt testified that this would be indicative of a very quick sale and departure from the location. Jackson, who had numerous prior convictions for drug related offenses, was in possession of $4895 at the time of his arrest.

Ann Louise Lennon, a secretary with Connecticut Media House, a marketing company, next testified regarding the defendant's employment. According to Lennon, the defendant was employed by Connecticut Media House in April, 2017, and worked approximately twenty hours per week depending on the needs of the business. Lennon testified that the defendant earned minimum wage plus a commission.

At the conclusion of the hearing, the court found that the defendant had violated his probation as to both grounds. As to the first ground, the court found that the defendant had violated his probation by failing to report to the Office of Adult Probation on October 15, 2015, and July 7, 2016, without good cause. As to the second ground, the court found that the defendant knowingly possessed crack cocaine and possessed it with intent to sell.[6] The court thereafter revoked the defendant's probation and sentenced him to six years of incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in finding that he violated his probation, as the evidence was insufficient to prove constructive possession of the narcotics that formed the basis for his April 26, 2017 arrest. He also argues that the two incidents in which he failed to report to the Office of Adult Probation were "nonviolations in the eyes of his probation officer." We will address these claims in turn.

We begin our analysis by setting forth the applicable standard of review. "[T]he purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation . . . rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing need not be sufficient to sustain a violation of criminal law.

. . . Thus, *a probation violation need only be proven by a preponderance of the evidence. . . .*

"A violation of probation hearing is comprised of an evidentiary phase and dispositional phase. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Dunbar*, 188 Conn. App. 635, 640–41, 205 A.3d 747, cert. denied, 331 Conn. 926, 207 A.3d 27 (2019).

With respect to the evidentiary phase of a revocation proceeding, "[t]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Walcott*, 184 Conn. App. 863, 871, 196 A.3d 379 (2018).

We first consider whether the evidence was sufficient to support the finding of a violation of probation on the basis of the defendant's arrest for drug related offenses on April 26, 2017. "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the contraband is not found on the defendant's person, the state must proceed on the alternat[ive] theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control over them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . [T]he state had to prove that the defendant, and not some other person, possessed a substance that was of narcotic

character with knowledge both of its narcotic character and the fact that he possessed it." (Internal quotation marks omitted.) *State* v. *Crewe*, 193 Conn. App. 564, 570–71, 219 A.3d 886, cert. denied, 334 Conn. 901, 219 A.3d 800 (2019). "To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." (Internal quotation marks omitted.) *State* v. *Davis*, 84 Conn. App. 505, 510, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004). "While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Internal quotation marks omitted.) *State* v. *Williams*, 110 Conn. App. 778, 785–86, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008).

The defendant relies primarily on *State* v. *Fermaint*, 91 Conn. App. 650, 881 A.2d 539, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005), an appeal from the judgment of violation of probation, in support of his claim that the evidence was insufficient to prove that he had constructive possession of the narcotics found in the vehicle. He argues that the evidence in that case, which was held not to be sufficient, had greater weight than that offered in the present case.[7] Specifically, the defendant argues that, in *Fermaint*, the confidential informant provided the identity of the suspected drug dealer and the vehicle in which she and others were driving; in the present case, by contrast, the confidential informant indicated only that someone named J was selling drugs in the apartment building but did not identify the defendant or his father. The defendant points out that in *Fermaint*, the police observed the defendant making furtive movements as they approached the vehicle, while in the present case, although Jackson made furtive movements, the police did not observe the defendant making any such movements. The defendant also contends that there was a physical barrier that partially blocked his access to the location of the drugs and that the paraphernalia and a majority of the currency were inaccessible to him. He notes that he did not make any incriminating statements to the officers and he did not own the vehicle in which the cocaine was found. He points out that no DNA or fingerprint analysis is available in this case. Finally, the defendant argues that the court's finding that he had a weekly income of $220 was clearly erroneous in that it conflicted with testimony regarding additional hours that he might have worked as well as commissions that he received.

In *State* v. *Crewe*, supra, 193 Conn. App. 574, an appeal from the judgment of conviction of possession

of a narcotic substance, the defendant also relied primarily on *State* v. *Fermaint*, supra, 91 Conn. App. 650, to support his contention that the evidence presented at trial was insufficient to establish that he was in constructive possession of narcotics at the time of his arrest. In considering the defendant's argument, we noted that "[r]eview of a claim of insufficient evidence is necessarily fact specific and . . . the evaluation of the strength of inferences involves an exercise of judgment." *State* v. *Crewe*, supra, 575. We noted that, although some factors, viewed in a vacuum, may militate against a finding of constructive possession, the fact finder reasonably could have inferred, on the basis of the totality of the circumstances, that the defendant knew of the presence of the narcotics and that he exercised dominion and control over them. Id., 574. We also emphasize that, unlike appeals from criminal judgments of convictions for which the state is required to prove possession beyond a reasonable doubt, in a revocation of probation case, the state is required to prove a violation only by a preponderance of the evidence. *State* v. *Walcott*, supra, 184 Conn. App. 876.

With these principles in mind, we conclude that the state presented the court with sufficient evidence of incriminating circumstances to buttress an inference that the defendant constructively possessed the narcotics that formed the basis for his arrest on April 26, 2017. See *State* v. *Crewe*, supra, 193 Conn. App. 575. Specifically, the evidence established that the police received information that an individual named J was selling crack cocaine from his apartment building. The police conducted surveillance and observed Jackson, who had a history of drug related offenses, drive up to the building. The defendant, who was the passenger in Jackson's vehicle, went into the building and returned within five minutes. The defendant's behavior was consistent with "possible street sales or narcotic sales." The defendant indicated that they had come from Hartford to visit J. Upon inquiry, however, he did not explain why the visit was so short.

After Jackson handed his pocketknife to the police, he reached over to the center console, where the police found the open bag of narcotics. The defendant was "within arm's reach" of the narcotics. At the time of his arrest, the defendant had $672 in his possession. The money was not in a wallet; rather, it was divided into two pockets, which behavior is "indicative of a very quick sale and then leaving the location."[8] The police also found a razor blade in the vehicle. Halt testified that the amount of cocaine that was found in the vehicle would be split up using a razor blade or some sort of sharp object. On the basis of the foregoing, the court reasonably could have inferred that Jackson drove the defendant to the apartment building and, once they arrived, the defendant went inside to make the purchase. The court then reasonably could have

inferred that once he was done, the defendant returned to the vehicle and placed the narcotics on the front seat with the intention that he and Jackson would use them or distribute them. Giving every reasonable presumption in favor of the trial court's ruling; see *State* v. *Walcott*, supra, 184 Conn. App. 871; we cannot conclude that the evidence was insufficient to prove that the defendant violated his probation by committing a crime on April 26, 2017.

We next consider whether the evidence was sufficient to support the court's conclusion that the defendant violated his probation on the basis of the defendant's failure to report to the Office of Adult Probation on two occasions. It is undisputed that the defendant failed to report to the Office of Adult Probation on October 15, 2015, and July 7, 2016. According to the defendant, these failures were de minimis and "would not generate a violation of probation." The defendant's argument overlooks the fact that "[a] critical element of probation is the supervisory role of the state. . . . That role cannot be diluted by a claim that one or more of the conditions were not substantial. All of the conditions at issue related to the state's interest in supervising the defendant, and were not, therefore, mere technical violations." (Internal quotation marks omitted.) *State* v. *Johnson*, 75 Conn. App. 643, 656, 817 A.2d 708 (2003); id. (declining to hold that one violation of condition of probation was merely " 'minor transgression' "). We, therefore, conclude that the evidence was sufficient to support the finding of a violation of probation on the basis of the two instances in which the defendant failed to report to the Office of Adult Probation.

II

The defendant next claims that the court erred in admitting hearsay testimony during the probation revocation hearing. He contends that the testimony was uncorroborated, unreliable, not admissible under any hearsay exception and admitted in violation of his due process rights. The state counters that our review of the defendant's due process claim is precluded by *State* v. *Shakir*, 130 Conn. App. 458, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011), and its progeny, and that the hearsay evidence at issue was sufficiently reliable for admission. We agree with the state.

The following facts are necessary for the resolution of this claim. At the probation revocation hearing, Halt testified that the surveillance at 59 Daly Avenue was based on information that Detective Kiely, another member of his unit, had received from a confidential source. The defendant objected on the basis that this testimony was hearsay. The court indicated that hearsay can be admissible in a violation of probation hearing provided there are some indicia of reliability. Halt then testified that this information came from another police officer who had received it from a confidential source.

When the court asked whether the informant was deemed reliable by the other police officer, Halt answered: "Correct or we wouldn't have used it." The court then overruled the defendant's objection and Halt testified that Kiely had received information from a confidential source that an individual nicknamed J was selling crack cocaine from the first floor of 59 Daly Avenue.[9] Halt further testified that Kiely was able to confirm that J was Jeremy Lawrence who resided on the first floor of 59 Daly Avenue.

During cross-examination, Halt indicated that he did not investigate Lawrence's criminal history prior to or during the surveillance. The defendant then introduced into evidence, over the state's objection, a copy of Lawrence's criminal record, which contained no criminal history of narcotics violations. Halt acknowledged on cross-examination that confidential sources are not always the most reliable sources and they might give erroneous information based on personal bias.[10] The defendant contends that there was no evidence regarding how Kiely knew who Lawrence was, where Lawrence resided in the apartment building, or that Lawrence was a drug dealer of any kind. Neither Kiely nor the confidential informant testified at the hearing.[11]

A

We first consider the defendant's claim that Halt's testimony was admitted in violation of his due process rights. The defendant acknowledges that he did not raise a due process violation in his objection to the admission of the evidence. In the event that we should find the issue inadequately preserved, the defendant requests review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), or, alternatively, reversal under the plain error doctrine, codified at Practice Book § 60-5. We conclude that the defendant's claim was not preserved, that it is not reviewable pursuant to *Golding* and that the claimed error is not so obvious and egregious that it requires reversal under the plain error doctrine.

"Pursuant to *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [U]nless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not con-

sider the merits of the defendant's claim." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Tucker*, 179 Conn. App. 270, 279, 178 A.3d 1103, cert. denied, 328 Conn. 917, 180 A.3d 963 (2018).

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution . . . . Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest . . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [a probation] violation. . . . Despite that panoply of requirements, a probation revocation hearing does not require all of the procedural components associated with an adverse criminal proceeding." (Citation omitted; internal quotation marks omitted.) *State* v. *Dunbar*, supra, 188 Conn. App. 650.

"In *State* v. *Shakir*, [supra, 130 Conn. App. 467], we noted that the due process safeguards are codified in Federal Rule of Criminal Procedure 32.1 and include 'an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear . . . .' We further explained that the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. . . . Specifically, we cited to case law from the United States Court of Appeals for the Second Circuit and stated: 'In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to [appear] . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay.' " (Citation omitted.) *State* v. *Polanco*, 165 Conn. App. 563, 570–71, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016).

"This court has determined, however, that where the defendant does not request that the court conduct the *Shakir* balancing test, or make a good cause finding, the record is inadequate for review of a due process claim under the first prong of *Golding*." *State* v. *Tucker*, supra, 179 Conn. App. 281–82, citing *State* v. *Shakir*, supra, 130 Conn. App. 468; see also *State* v. *Randy G.*,

195 Conn. App. 467, 475, n.3, 225 A.3d 702, cert. denied, 335 Conn. 911, A.3d (2020); *State* v. *Dunbar*, supra, 188 Conn. App. 652; *State* v. *Esquilin*, 179 Conn. App. 461, 477–78, 179 A.3d 238 (2017); *State* v. *Polanco*, supra, 165 Conn. App. 576.

In the present case, the defendant failed to request that the court conduct a balancing test pursuant to *State* v. *Shakir*, supra, 130 Conn. App. 467, when Halt testified that Kiely had received information from a confidential source. The defendant, rather, simply stated: "I'm going to object, Your Honor. It's hearsay." The state had no notice of the defendant's due process claim and, accordingly, did not present evidence regarding its reasons for not producing Kiely at the hearing. The defendant, therefore, failed to sustain his burden of providing this court with an adequate record to review his due process claim. "In this circumstance, the state was not responsible for this evidentiary lacunae. It would be patently unfair to address the defendant's due process claim on the basis of this record." *State* v. *Polanco*, supra, 165 Conn. App. 575. Accordingly, we decline to review the defendant's unpreserved due process claim on the basis of an inadequate record.[12]

The defendant similarly cannot prevail under the plain error doctrine. "[T]he plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Tucker*, supra, 179 Conn. App. 282. On the basis of our review of the record, we conclude that the defendant has not demonstrated an error so obvious that it requires reversal under the plain error doctrine.

B

We next consider the defendant's claim that the court abused its discretion in admitting Kiely's hearsay statements because the statements were unreliable and uncorroborated. We conclude that the court did not abuse its discretion in admitting the hearsay statements.

"It is well settled that probation revocation proceedings are informal and that strict rules of evidence do not apply to them. . . . Hearsay evidence may be admitted in a probation revocation hearing if it is relevant, reliable and probative. . . . At the same time, [t]he process . . . is not so flexible as to be completely unrestrained; there must be some indication that the

information presented to the court is responsible and has some minimal indicia of reliability." (Internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 146, 170 A.3d 120 (2017).

"Regarding challenges to the trial court's evidentiary rulings, our standard of review is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) Id., 147.

The defendant contends that no corroborating evidence was offered to support Kiely's statement to Halt and that it was unreliable. We disagree. At the hearing, Halt testified, over objection, that Kiely had received information from a confidential source that Lawrence sold crack cocaine from the first floor of 59 Daly Avenue. When the court questioned Halt regarding whether the informant was deemed reliable, Halt responded: "Correct or we wouldn't have used it." The court was not presented with any evidence casting doubt on the reliability of Kiely's statement to Halt. During cross-examination, defense counsel had the opportunity to question Halt regarding why Kiely had deemed the information from the confidential informant reliable but did not do so. Defense counsel, rather, asked questions about the reliability of confidential informants in general. The court, therefore, was presented with testimony that contained "some minimal indicia of reliability." (Internal quotation marks omitted.) *State* v. *Megos*, supra, 176 Conn. App. 146. We conclude, therefore, that the court did not abuse its discretion in admitting the statement of Halt regarding the information that he had received from Kiely.

III

The defendant's final claim is that the court abused its discretion in imposing a sentence of six years of incarceration. In support of this claim, the defendant contends that he was doing well on probation, the evidence was insufficient to establish possession of narcotics, and the remaining violations were de minimis.[13] We disagree.

"If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence

imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Sherrod*, 157 Conn. App. 376, 381–82, 115 A.3d 1167, cert. denied, 318 Conn. 904, 122 A.3d 633 (2015). "In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Megos*, supra, 176 Conn. App. 149.

The record reveals that the trial court balanced the defendant's interests in liberty and rehabilitation against the need to protect the public. During the sentencing phase of the hearing, the court heard the testimony of Jerrica Vega, the defendant's girlfriend, who testified that the defendant was providing support for their four month old daughter and assistance to her as she recovered from a car accident. Vega testified that the defendant was "a great person, a good father." Although acknowledging that the defendant had been helpful to Vega, the court concluded that the defendant's behavior was "inimical to his own rehabilitation as well as the safety of the public" and that it did not believe that any further purpose could be served by continuing the defendant's probation. Specifically, the court expressed concern that, at the same time that the defendant was helping Vega, he was engaging in criminal activity while a suspended sentence of eight and one-half years remained outstanding. According to the court, this demonstrated a "lack of appreciation for the consequences of further unlawful activity." On the basis of this record, we conclude that the court did not abuse its discretion in revoking the defendant's probation and imposing a sentence of six years of incarceration.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant's plea was part of a global plea bargain involving nine files, including the file underlying the present appeal. The court imposed nine concurrent sentences of twenty years of incarceration, execution suspended after ten years, with five years of probation.

[2] The court terminated the defendant's probation on all of his cases other than the present case.

[3] On cross-examination, Mena acknowledged that two failures to report in a two and one-half year period was "not bad."

[4] Halt testified that another police officer, Detective Kiely, received the information from the confidential informant. The defendant objected on the basis that this evidence constituted inadmissible hearsay. The trial court overruled the objection. As discussed in part II of this opinion, we conclude that the court properly admitted the evidence regarding information received from the confidential informant.

[5] Although Halt testified that the defendant had $672 in his possession at the time of his arrest, the record is unclear whether he had $670 or $672.

[6] In its decision, the court stated: "[O]n April 26, 2017, in New Britain, the defendant, having driven from Hartford, entered 59 Daly Avenue for between two and five minutes, visited the residence of a reputed crack

dealer and returned to a car driven by the defendant's father, who himself has a history of narcotics violations.

"The defendant, himself, is not drug dependent. The defendant, when stopped, had $672 in his pockets in his possession and that is separate from his wallet, a reliable indicia of a quick drug sell. The evidence indicates the defendant's legitimate employment at that time, the only established legitimate employment, would garner an income of approximately $220 a week.

"The police found 1.9 grams of crack cocaine within the car as well as a razor blade with cocaine residue. Now, the latter was on the father's side of the car, the father being the driver. Now, the former was adjacent to the console on the driver's side of the console but within reach of the defendant.

"Now more importantly, it is a reasonable inference now that the defendant in leaving the car, visiting his friend Jeremy for a very brief period of time, Jeremy being a reputed crack dealer, and returning to the car transported crack cocaine.

"In doing so, he knowingly possessed crack cocaine and possessed it with an attempt to deliver constituting sale within the meaning of [General Statutes (Rev. to 2017) § 21a-278 (b)]. The possession by itself, of course, is a violation of . . . [§] 21a-279.

"So there is a violation of the probation on both of those grounds using the standard of preponderance of the evidence, which is, of course, a lower standard than beyond a reasonable doubt."

[7] "In *Fermaint*, the police received a tip from a confidential informant that the owner of a vehicle possessed crack cocaine and that she was accompanied by two males, one of whom the informant identified as 'Hector.' . . . After locating and stopping the vehicle, officers observed the occupants of the vehicle engaging in furtive movements, including the defendant's bending from the [backseat] toward the front seat passenger. . . . As one officer approached, the front seat passenger was observed putting something in her pants. . . . An officer observed several crumbs of a rock like substance, which later tested positive for cocaine, on the [backseat] next to the defendant. . . . The officer testified that it was possible that the defendant could have sat in the [backseat] without noticing the crumbs. . . . A green leafy substance, later found to be marijuana, was found in the front carpet area. . . . A plastic bag containing a large rock like substance, which tested positive for cocaine, and $120 were found on the person of the front passenger. . . . An address book and $2 were found on the person of the defendant, but no drugs. . . . This court reversed the trial court's judgment revoking the defendant's probation. . . . It held that the minimal nexus between the defendant and the drugs, along with the perhaps ambiguous movements observed by the officers, was insufficient to establish constructive possession of a narcotic substance." (Citations omitted.) *State* v. *Crewe*, supra, 193 Conn. App. 574–75.

[8] The defendant contends that the court's calculation of his income as $220 per week is clearly erroneous and omits the fact that he may have worked additional hours and earned commissions. We conclude that the court nonetheless reasonably could have inferred that the $672 that the defendant had in his possession upon arrest was a product of the sale of drugs rather than his employment. "[O]ur courts regularly have regarded a criminal defendant's quantum of cash as circumstantial evidence of his intent to sell drugs." *State* v. *Garcia*, 108 Conn. App. 533, 540, 949 A.2d 499, cert. denied, 289 Conn. 916, 957 A.2d 880 (2008).

[9] Halt testified as follows:

"[The Prosecutor]: And why is it that you came to start surveillance around 59 Daly Avenue in New Britain?

"[Halt]: Another member of our unit, Detective Kiely, had received information from a confidential source—

"[Defense Counsel]: I'm going to object, Your Honor. It's hearsay.

"[The Prosecutor]: Hearsay's admissible at a violation of probation hearing, Your Honor.

"The Court: Yeah, hearsay can be admissible, provided it's—there's some indicia of reliability. You got it from a confidential information source. Is that correct?

"[Halt]: This came from another police officer.

"The Court: Another police officer.

"[Halt]: Who had gotten it from a confidential source.

"The Court: Okay. Do you know whether that [confidential informant] was deemed reliable by the other police officer?

"[Halt]: Correct or we wouldn't have used it.

"The Court: All right. I will overrule the objection.

"[The Prosecutor]: And that was going to be my next question, Your Honor.

"The Court: All right. Go ahead.

"[The Prosecutor]: Thank you for asking. . . . So after you—what information did you obtain from Officer—or Detective Kiely?

"[Halt]: That the—there was [a] gentleman that went by the nickname J who was selling crack cocaine from the first floor of 59 Daly Avenue."

[10] Halt testified as follows:

"[Defense Counsel]: Now, Officer, let's face it, confidential sources are hardly the most reliable people in the world, isn't that correct?

"[Halt]: I would say it depends on what—what we're talking about.

"[Defense Counsel]: Good point. Very often they're desperate people. They've been arrested. They have a long criminal history. They're trying to curry favor with the police department in some respect. Correct?

"[Halt]: That's correct.

"[Defense Counsel]: But they will lie. Sometimes confidential sources give you erroneous information based upon their personal bias. It has happened, hasn't it?

"[Halt]: Correct."

[11] In his initial appellate brief the defendant challenged the state's failure to present Kiely or the confidential informant as a live witness. In his reply brief, however, the defendant acknowledges that his hearsay claim is confined to the statements of Kiely.

[12] The defendant contends that the *Shakir* line of cases is distinguishable and that the record in the present case is sufficient, clear and unambiguous as to whether a constitutional violation has occurred. He contends that the difficulties for the state in calling the witnesses in *Shakir* and its progeny were obvious while in the present case, there is no acceptable justification for the state not to call a local detective to testify on a statement that was vital to the state's case. We disagree and conclude that the defendant in this case has failed to sustain his burden of providing this court with an adequate record to review his due process claim.

The defendant also argues that the *Shakir* standard should be modified to allow for *Golding* review of unpreserved *Shakir* claims. We previously denied the defendant's motion for consideration of this matter en banc to consider whether to modify *Shakir*. "To the extent that the defendant's argument suggests that our [holding] in *Shakir* . . . should be overruled as conflicting with United States and Connecticut Supreme Court precedent, that is not within the province of a three judge panel of the Appellate Court. We note that this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *State* v. *Tucker*, supra, 179 Conn. App. 279 n.4.

[13] In his reply brief, the defendant indicates that the principal reason for raising this claim is that, if this court concludes that the trial court erroneously found a violation of probation on the basis of the narcotics offenses, a remand would be necessary for resentencing based only on the defendant's failures to appear. As we conclude in part I of this opinion, however, the evidence was sufficient to support the court's conclusion that the defendant violated his probation on the basis of the narcotics offenses.

[14] To the extent that the defendant claims, however, that the sentence imposed by the trial court was excessive, this claim is not reviewable on appeal and should be made through the sentence review process pursuant to General Statutes § 51-195. See *State* v. *Wells*, 112 Conn. App. 147, 160 n.3, 962 A.2d 810 (2009) ("To the extent that the defendant also claims that the five year sentence imposed by the court was excessive, we deem such argument to be misplaced. An appeal following a revocation proceeding is not the proper forum in which to challenge the length of such sentence."), citing *State* v. *Fagan*, 280 Conn. 69, 107 n.24, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007); see also *State* v. *Ricketts*, 140 Conn. App. 257, 264 n.5, 57 A.2d 893 ("to the extent that the defendant challenges the length of the sentence, we cannot review such claims because those claims should be made through the sentence review process under . . . § 51-595"), cert. denied, 308 Conn. 909, 61 A.3d 531 (2013).